INDIANA INDUSTRIES, INC., An Indiana Corporation, and Money Management Corporation, Appellants-Defendants Below,

v.

WEDGE PRODUCTS, INC., An Ohio Corporation, and United Tractor Company, An Ohio Corporation, Appellees-Plaintiffs Below.

No. 3–181A6.

Court of Appeals of Indiana,
Third District.

Jan. 28, 1982.
Rehearing Denied March 17, 1982.

**420**

Rhett L. Tauber, Theodoros, Anderson & Tauber, P.C., Merrillville, for appellants-defendants.

Dawn Wellman, Cohen & Thiros, Merrillville, for appellees-plaintiffs.

STATON, Judge.

Wedge Products, Inc. (Wedge) entered a purchase agreement with Indiana Industries, Inc. (Indiana) for the assets of United Tractor Division of Indiana Industries, Inc. (Tractor).[1] The purchase agreement allowed Wedge an adjustment to the purchase price for inventory proving obsolete.

Wedge instituted this cause of action to recover that adjustment and the trial court entered judgment for Wedge of $48,358.06 plus pre-judgment interest of $31,722.89. Indiana raises the following issues for our review:[2]

(1) Whether the trial court erred in adopting verbatim Wedge's proposed findings of fact and conclusions of law;

(2) Whether the terms of the agreement were ambiguous regarding the methods of inventory;

(3) Whether the trial court's use of the terms "on hand" in the conclusions of law was erroneous;

(4) Whether the trial court erroneously allowed Wedge recovery for inventory not included in the purchase agreement;

(5) Whether the trial court erred in allowing pre-judgment interest;

(6) Whether the trial court erred in concluding Wedge was under no duty to mitigate damages and in denying Indiana $4,465.00 credit for such mitigation; and,

(7) Whether the trial court erred in denying Indiana a $5,000.00 credit under the terms of the agreement.

The trial court is affirmed upon issues one through five. Indiana should have been granted the $4,465.00 and the $5,000.00 credits under issues six and seven, respectively. This cause is therefore remanded

---

1. At the date of the purchase agreement, Wedge's corporate predecessor was American Industries, Inc., which subsequently changed its name to United Tractor & Equipment Company, which was thereafter purchased by Wedge. For simplicity and clarity, "Wedge" shall refer to these corporate entities regardless of name or form. Tractor, at the date of the purchase agreement, was a subsidiary of Indiana but subsequent thereto became a subsidiary of Wedge.

2. Indiana presented the trial court and this Court with a fifty-nine page motion to correct error alleging fifty-seven separate errors. Upon appeal, Indiana consolidated those alleged errors into ten arguments. *See*, AP. 8.3(A)(7). Those ten arguments, however, are overlapping, confusing and often hard to fol-

low. This Court, in an effort to clarify the issues and the arguments pertinent thereto, has sorted and realigned the issues and arguments.

We also note that both the appellant's and appellees' briefs share the common deficiency of proper citation to the record to support their arguments. *See*, AP. 8.3(A)(7). Appellant's brief gives citations to only those parts of the record favorable to its position. The appellees' briefs frequently attribute testimony to individual witnesses without any citation to the record. This improper appellate practice makes review of the cause extremely difficult. We choose, however, to address the merits. *But see, Lutheran Hospital of Fort Wayne, Inc. v. Dept. of Public Welfare* (1979), Ind.App., 397 N.E.2d 638, 639.

for further proceedings consistent with this Opinion.

Wedge agreed to purchase the assets of Tractor from Indiana and the purchase agreement was finalized on November 15, 1968 (closing date). Under the terms of the agreement, Wedge was allowed an adjustment to the purchase price for "obsolete" inventory. "Obsolete" was defined under the agreement as inventory not "sold, used or consumed" within the three year period following the closing date. Therefore, any Tractor inventory included in the agreement on the closing date not sold, used or consumed by November 15, 1971 (obsolescence date) was "obsolete." Wedge was entitled under the agreement to be reimbursed for the value of the inventory proven "obsolete."

█ In finding for Wedge, the trial court entered extensive findings of fact and conclusions of law. Indiana's appeal, in essence, is a challenge to those findings and conclusions. We note at this juncture, therefore, that in reviewing the findings of fact made by the trial court, this Court will neither weigh the evidence nor judge the credibility of witnesses. We will disturb those findings only when such are clearly erroneous. The findings as found by the trial court will stand unless the record discloses no facts nor inferences therefrom which support those findings. TR. 52(A); *Indiana Tri-City Plaza Bowl, Inc. v. Estate of Glueck* (1981), Ind.App., 422 N.E.2d 670, *transfer pending; Blade Corp. v. American Drywall, Inc.* (1980), Ind.App., 400 N.E.2d 1183. However, if the error charged is the trial court's application of the law, then this Court must correctly apply the law to the

trial court's findings of fact. *Brokus v. Brokus* (1981), Ind.App., 420 N.E.2d 1242; *Merryman v. Price* (1970), 147 Ind.App. 295, 259 N.E.2d 883, *cert. denied*, 404 U.S. 852, 92 S.Ct. 89, 30 L.Ed.2d 92.

## I.

### Adoption of Findings of Fact

█ Indiana first challenges the trial court's verbatim adoption of Wedge's proposed findings of fact and conclusions of law. This Court recently stated:

"When the trial judge signs the findings of fact and conclusions of law, they become the court's findings of fact and conclusions of law... The court is responsible for their correctness... These findings of fact and conclusions of law are not weakened because they were adopted verbatim... If the proposed findings of fact and conclusions of law did not state the facts as the trial court found them to be, it would not have adopted them as its own. TR. 52(C) encourages the trial court to request the parties to submit proposed findings of fact and conclusions of law. These findings will not be set aside unless clearly erroneous...."

*Indiana Tri-City Plaza Bowl, Inc. v. Estate of Glueck, supra,* 422 N.E.2d at 674. Indiana's challenge is therefore without merit.[3]

## II.

### Methods of Inventory

█ Indiana next challenges the trial court's conclusion:

"1. That the parties entered into a clear, unambiguous contract...."

Such an "argument" is totally inappropriate under AP. 8.3(A)(7) and presents nothing for this Court to review. *See, Abrams v. State* (1980), Ind., 403 N.E.2d 345; *American Optical Co. v. Weidenhamer* (1980), Ind.App., 404 N.E.2d 606; *Lutheran Hospital of Fort Wayne, Inc. v. Dept. of Public Welfare, supra; Stout v. Tippecanoe County Dept. of Public Welfare* (1979), Ind.App., 395 N.E.2d 444; *Uhl v. Liter's Quarry of Indiana, Inc.* (1979), Ind.App., 384 N.E.2d 1099.

3. Indiana also challenges the sufficiency of the evidence supporting *all* of the findings of fact and conclusions of law. On this further issue, however, the following paragraph is Indiana's argument, *in toto*:

"At the very least, this Court should carefully scrutinize the findings of fact and conclusions of law which were adopted in verbatim fashion by the Trial Court from those submitted by the plaintiffs' counsel, and this Court should scrutinize them more critically and give them less weight than if they were the work product of the judge."

Indiana asserts the agreement was ambiguous regarding the method of inventories to be used in the determination of the adjustment to the price.

Both parties to this appeal agree the only pertinent portions of the contract are as follows:

## "4.  CALCULATION OF INVENTORY SELLING PRICE AND ADJUSTMENT TO PURCHASE PRICE

"4.1  A physical inventory of Tractor as of October 1, 1968 shall be conducted prior to the Closing Date under the observation of certified public accountants selected by, and to be paid by, American and any other reasonable number of representatives of American as shall be selected by it.  Inventory shall be priced at the lower of cost or market on a first in, first out basis in accordance with generally accepted accounting principles."

\*     \*     \*     \*     \*     \*

"4.3  Indiana further agrees to reimburse American at the end of the three-year period following the Closing Date (after having received written notice from American) in an amount or amounts equal to the value of any of Tractor's Inventory sold to American hereunder which proves to have been obsolete on the Closing Date or which through subsequent determination was not in existence on the Closing Date; provided, however, that no such reimbursement shall be made except to the extent that the amount to be reimbursed exceeds the amount of $5,000.  For the purposes of this Agreement, the term obsolescence shall mean any inventory which is not sold, used or consumed three years following the Closing Date.  Indiana agrees and warrants that all Inventory is and shall be physically located at or about the plant of Tractor, except for finished goods in the hands of dealers on consignment and materials in the hands of processors for modification into component parts.  Any such obsolete inventory for which American is reimbursed by Indiana, shall, if requested by Indiana, be returned to Indiana.

## "5.  COMPLETION AND ASSIGNMENT OF ORDERS

\*     \*     \*     \*     \*     \*

"5.3  American agrees to complete and fully perform the purchase commitments taken and entered into in the ordinary course of Tractor's business and in customary and usual amounts which shall be unfilled as of the Closing Date."

Indiana first argues that sections 4.1 and 4.3 should be construed together to require the *physical* movement of the inventory after the closing date to be based upon a first-in-first-out procedure.  Indiana further argues that the adjustment to price under section 4.3 should also be based upon the same first-in-first-out procedure for the physical movement of the inventory.  Indiana concludes that if the trial court had found this construction of the purchase agreement provisions, then Indiana would be liable for little or no reimbursement for "obsolete" inventory.

In addressing a dispute over contract terms, the court must first examine the contract to determine whether the terms are ambiguous.  *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838.  The contract terms are ambiguous if reasonable men would find the terms of the contract susceptible to more than one interpretation.  *Piskorowski v. Shell Oil Co., supra; Boswell v. Lyon* (1980), Ind.App., 401 N.E.2d 735.  If there is no ambiguity, the terms of the contract are conclusive, *Boswell v. Lyon, supra,* and the construction regarding those terms is a matter of law to be determined by the court.  *Piskorowski v. Shell Oil Co., supra.*

We agree with the trial court and find no ambiguity in the contract.  Rather, Indiana seeks to bootstrap its position by "interpreting" ambiguities into the purchase agreement and then interjecting terms favorable to itself.

As denoted by its title, part four of the purchase agreement controlled the price

and the adjustment of the price of the inventory. Section 4.1 required a physical inventory of Tractor before the closing date. The inventory "price" was determined "at the lower of cost or market on a first in, first out basis in accordance with generally accepted accounting principles." The *only* factor addressed by section 4.1 was the "price" determined for Tractor's inventory on the specific date of October 1, 1968. Section 4.1 had no other function under the contract than to place an agreed upon value for the Tractor inventory for the closing date. Section 4.1 makes no reference to the physical movement of the Tractor inventory after the closing date.

In pertinent part, section 4.3 states that Indiana shall reimburse Wedge "in an amount . . . equal to the value of any of Tractor's Inventory sold to [Wedge] hereunder which proves to have been obsolete. . . . For the purposes of this Agreement, the term obsolescence shall mean any inventory which is not sold, used or consumed three years following the Closing Date." This provision allows for reimbursement for inventory at the end of three years which has not been sold, used or consumed. There is nothing in section 4.3 pertaining to the method of inventory nor the valuation of the inventory. Wedge was to be "reimbursed" the value determined at the closing date of any "obsolete" inventory. That value was determined as the "price" of individual items under section 4.1.

Indiana argues with great urgency that the use of "first in first out" in section 4.1 must be read into section 4.3 to require Wedge to physically move its inventory on a first in first out basis. However, the phrase "first in first out" is an accounting term of art. This phrase refers to a method by which accountants place a value upon inventory. Under this valuation method,

the accountant "assumes" that the oldest acquisitions of inventory are disposed of first. That "assumption", by its very nature, is not dependent upon whether the oldest acquisitions are in fact disposed of first. *See,* S. Davidson & R. Weil, Handbook of Modern Accounting, p. *16*–12 (2d ed. 1977); Ralph Estes, Dictionary of Accounting, p. 52 (1981); Eric L. Kohler, A Dictionary for Accountants, p. 272–75 (5th ed. 1975); R. Wixon & W. Kell, Accountants' Handbook, p. *12*–36 to 37 (5th ed. 1970).

Indiana's heavy reliance upon this isolated phrase is misplaced. Under the purchase agreement the phrase "first in first out" pertains only to the valuation of the closing date inventory. That value was to be based upon a first in first out *accounting* method "in accordance with generally accepted accounting procedures." Section 4.1 is a clear and unambiguous statement for the determination of that value. Section 4.3 is a clear and unambiguous statement for an adjustment to that value.

Indiana's *construction* of these provisions is not only strained but attempts to introduce an ambiguity into otherwise unambiguous provisions. The trial court did not err in construing the agreement as it did. Therefore, all arguments by Indiana which are based solely upon its "first in first out" physical movement of inventory argument must fail.[4]

■ Indiana further argues that, because section 4.3 does not provide for the method of inventory to be taken at the obsolescence date, the contract is ambiguous. From that, Indiana argues that the trial court erred in not allowing the introduction of extrinsic evidence to resolve this "ambiguity." Although it is true section 4.3 does not provide for a method of inven-

---

4. Much of Indiana's argument upon appeal consists of an analysis of the evidence presented at trial and its application under a first in first out physical movement of inventory. Often, Indiana forwards evidence regarding individual inventory items. In each instance, Indiana argues that if the court had used the first in first out procedure, then Wedge would not be entitled to any reimbursement for "obsolete"

inventory. Indiana also argues that the trial court erred in allowing Wedge to recover for obsolete inventory which was on order prior to the closing date but received by Tractor after the closing date. Again, however, Indiana relies upon its first in first out physical movement of inventory argument to support this argument. As noted above, all of these arguments must fail.

tory, such does not make the clause ambiguous. The trial court did not err.

Section 4.3 neither requires any specific method of physical inventory, nor in fact, any inventory. That section merely provides that Wedge would be reimbursed for any obsolete "inventory." The section then defines obsolete as inventory which has not been "sold, used or consumed." This contract clause requires nothing more than a reasonable determination of the inventory items which were obsolete as defined by the agreement. The trial court found,

"57. That the plaintiffs by preparing an inventory from perpetual inventory cards and a physical inventory complied by conducting the inventory in a reasonably prudent fashion."

and, thereafter concluded:

"6. That the plaintiff used a reasonable method by which the inventory was taken in November, 1971."

There is sufficient evidence in the record that the method of inventorying used to determine obsolete items was reasonable; and the law was properly applied to those facts. Under our above described standards of review, we can find no error.

### III.

#### Use of "on hand" Terminology

Next, Indiana objects to the use of "on hand" in the following conclusions:

"1. That the parties entered into a clear, unambiguous contract which provides that the defendant shall pay the plaintiff for any service or production parts and finished goods still on hand on November 15, 1971, three years after the contract was executed."

\*    \*    \*    \*    \*    \*

"9. That the terms of the contract in § 4 specifically state that whatever is on hand on November 15, 1971, which was on hand on November 15, 1968, is obsolete and the defendant shall pay to the plaintiff the cost of these items."

Indiana objects in that the contract defined obsolete inventory as not "sold, used or consumed," rather than as "on hand."

We recognize the terminology "on hand" is not as precise as not "sold, used or consumed." However, generally inventory not sold, used or consumed would be "on hand." In other words, it is not a clearly erroneous conclusion.

Additionally, we note the trial court made the following findings:

"7. That pursuant to the contract, Indiana Industries, Inc. agreed to reimburse [Wedge] at the end of [the] three (3) year period following the closing date in an amount equal to the value of any of United Tractor's inventory sold to [Wedge] which was obsolete on the closing date or which through subsequent determination was not in existence on the closing date.

"8. That the contract defined the term 'obsolescence' to mean any inventory which was not sold, used or consumed three (3) years following the closing date."

These findings establish the trial court's clear understanding of the purchase agreement provisions. The "on hand" phraseology is merely a representative shorthand for the trial court's findings.

More importantly, we find the trial court's application of the "on hand" conclusions did not in fact allow Wedge reimbursement for inventory items "sold, used or consumed." See part 4, this Opinion, *infra*.

### IV.

#### Non-inventory Items

Indiana further alleges the trial court erred in requiring the reimbursement for a SM–340 unit and a CB–40 unit. Indiana claims that no such finished units were included in the closing date inventory. Indiana also alleges it received no value for these "finished" units and, therefore, it is unfair to be required to "reimburse" such value.

The trial court made the following findings:

"20. That a shop order 12 dated in the fall of 1968 ordered the production department to begin completion of a 340 Ford to be sold to Equipment Company...

"21. That said 340 Ford was under production from production parts on hand at the inventory of October, 1968, but was not completed.

"22. That CB–40's were a type of small tractor produced by United Tractor when owned by Indiana Industries, but discontinued by ... Wedge ..."

\* \* \* \* \* \*

"38. That the 340 Ford was put into production prior to November, 1968, and was sold to Equipco on July 29, 1970 on consignment...

"39. That the same 340 Ford was returned to United Tractor on March 10, 1971, and on the premises on November, 1971...

"40. That the CB40 which was on the premises in November, 1971, was produced from production parts on hand at the original inventory in October, 1968."

The record, by both testimony and documentation, clearly supports the trial court's findings that the parts composing the finished units were included in the closing date inventory but in an unfinished form. The parts were assembled pursuant to already existing purchase orders but were never sold. The court did not err in allowing Wedge credit for these items.

The contract itself defines inventory in section 1.1(d) as including "raw materials, work in process, and finished goods ...." Thus, whether the inventory was in either a finished or unfinished form, the contract provided for reimbursement if not "sold, used or consumed." If the parts composing the finished units were in the closing date inventory, then Indiana did receive value for the parts whether finished.

Indiana further argues, however, that the contract term "obsolete" specifically excluded "used" inventory items. And, obviously, the component parts were "used" to assemble the finished SM–340 and CB–40 units. Therefore, argues Indiana, the finished units were obsolete as defined by the agreement. We find this argument without merit.

In the context of the purchase agreement, the term "used" might have been utilized to denote that the inventory parts were "employed in accomplishing something," or that the inventory parts had "endured use." See, Webster's New Collegiate Dictionary, p. 1288 (1977). Utilized in conjunction with the terms "sold" and "consumed," we think the latter meaning was intended. That is, should certain parts or finished goods be "used" in the business, suffer wear and tear, depreciation or otherwise be devalued through use in the operations of Tractor, then the item was not "obsolete."

Here, however, the inventory parts were employed in developing a salable finished product. The parts did not suffer wear and tear, depreciation or use in the operations of Tractor's business. In fact, the parts were combined to make a more valuable whole, the finished product. The trial court was not clearly erroneous in finding these finished units "obsolete" as that term is defined under the contract.

Indiana further objects to the reimbursements allowed Wedge for a SM–30C unit and a spotter unit. Prior to the closing date, both of these units were placed by Tractor on consignment with retail dealers. Both units were returned to Tractor prior to the obsolescence date. The court made the following findings:

"17. That a certain SM 30–C, a finsihed [sic] good owned by American Industries on November 15, 1968, serial number 5965, was on consignment to Freeman Brothers, Miami, Florida...

"18. That a spotter owned by American Industries on October 2, 1968, was on consignment to Jersy Billets, Modern Handling Equipment, Hasbrouch Heights, New Jersey.

"19. That the consignment was verified by a letter from Raymond Fellicetti of October 2, 1968, to Jersy Billets stating that spotter, serial number 5933 was in their possession..."

\* \* \* \* \* \*

"35. That the claim submitted included four finished goods listed as a CB–40, SM 30C serial number 5965, 340 Ford and a spotter, serial number 5933, all of which were included in the inventory of October, 1968, and still on hand in November, 1971.

"36. That the spotter, serial number 5933, was on consignment to Modern Equipment Handling in October, 1968, and returned to United Tractor premises July 13, 1970, and was on the premises on November 15, 1971...

"37. That the SM30C, serial number 5965, was on consignment to Freeman & Sons in October, 1968, and returned to United Tractor in December, 1970, and was on the premises in November, 1971...."

These findings are clearly supported in the record by testimony and documentation. The court was not clearly erroneous in allowing Wedge reimbursement for these "obsolete" inventory items. These items were not "sold, used or consumed," but merely placed on consignment.

## V.

### Pre-judgment Interest

■ Indiana also challenges the trial court's granting of pre-judgment interest. As repeatedly stated in Indiana cases, pre-judgment interest is proper when the damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued. *See e.g., Town & Country Mutual Insurance Co. v. Savage* (1981), Ind.App., 421 N.E.2d 704, *transfer pending; City of Anderson v. Salling Concrete Corp.* (1981), Ind.App., 411 N.E.2d 728; *Fort Wayne National Bank v. Scher* (1981), Ind.App., 419 N.E.2d 1308; *Portage Indiana School Construction Corp. v. A. V. Stackhouse Co.* (1972), 153 Ind.App. 366, 287 N.E.2d 564.

■ The "ascertainable" standard is in reference to the amount of damages as distinguished from the liability for those damages. The trier of fact need always exercise its judgment to determine the liability for damages. But, pre-judgment interest is proper where the trier of fact need not exercise its judgment to assess the amount of damages. *Luksus v. United Pacific Insurance Co.* (7th Cir. 1971), 452 F.2d 207; *Floyd v. Jay County Rural Electric Membership Corp.* (1980), Ind.App., 405 N.E.2d 630.

For example in *City of Anderson v. Salling Concrete Corp., supra,* the trier of fact had to exercise its judgment in determining the actual and potential values of the real property involved. The evidence presented at trial forwarded at least three different figures for the value of the land. Thus, the trier of fact had to exercise its judgment and, therefore, pre-judgment interest was found inappropriate.

However, in *Floyd v. Jay County Rural Electric Membership Corp., supra,* an individual was found by the trier of fact to have committed a series of fraudulent acts. Upon appeal, the Court stated:

"After determining liability in a multitude of separate incidents, the trier of fact had only to add the sums of money involved in each to determine damages. This calls for no exercise of judgment, merely computation. We cannot imagine a better case for allowing pre-judgment interest."

405 N.E.2d at 636.

In the present case we are well aware that the total reimbursement figure (damages) was in issue. And, we further note that Wedge's original claim for $73,108.45 was substantially different from the damages subsequently sought, $53,476.06 (complaint), and those awarded by the trial court, $48,358.06. *See Portage School Construction Corp. v. Stackhouse, supra.* However, that does not render the damages an unascertainable amount or not subject to mathematical computation.

Each individual item in the closing date inventory had a specific value agreed to under the purchase agreement. Each inventory item claimed by Wedge to be "obsolete" had that specific value. At trial, the issue was whether any given inventory item was "obsolete." If found obsolete, Wedge

was entitled to its reimbursement value. Damages, therefore, were a mere mathematical computation of adding the total value of all the "obsolete" inventory.

We further note that the obsolescence date was November 15, 1971. At the date of this Opinion, a full decade has passed without Wedge receiving the remuneration specifically provided under the contract. Surely, this is a proper case for the allowance of pre-judgment interest. As recently stated by Judge Garrard:

> "The award of interest is founded solely upon the theory that there has been a deprivation of the use of money or its equivalent and that unless interest be added, the injured party cannot be fully compensated for the loss suffered... Interest is recoverable not as *interest* but as additional damages to accomplish full compensation...."

*Fort Wayne National Bank v. Scher, supra,* 419 N.E.2d at 1310–11.

## VI.

### Sale of Inventory

Indiana also challenges the trial court's conclusion which stated:

> "17. That pursuant to the contract the plaintiff had no duty to sell, scrap, or otherwise interfere with the obsolete materials, in that the claim was fixed by the parties in the contract and the contract gave the defendant the right to reclaim the property as their remedy."

Indiana claims the conclusion states that Wedge had no duty to mitigate damages which is contrary to Indiana law.

We agree with Indiana that a non-breaching party, as a general rule, must mitigate its damages. *See, e.g., Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269; *Lindenborg v. M & L Builders & Brokers, Inc.* (1973), 158 Ind.App. 311, 302 N.E.2d 816. However, it is also the rule in Indiana that the breach-

ing party has the burden to prove the non-breaching party has not used reasonable diligence to mitigate its damages. *See, e.g., Salem Community School Corp. v. Richman, supra; White Truck Sales v. Shelby National Bank* (1981), Ind.App., 420 N.E.2d 1266; *Hirsch v. Merchants National Bank & Trust Co.* (1975), 166 Ind.App. 497, 336 N.E.2d 833.

Upon appeal Indiana cites to portions of the record where a witness for Wedge admitted Tractor had never held an auction for the "obsolete" inventory. This same witness testified that Tractor may have attempted to sell some of the obsolete inventory for scrap. There was evidence, however, that an "obsolete" SM–30C unit was sold by Tractor for $4,465.00. No other evidence is cited by Indiana.

The trial court found Indiana to clearly be in breach of the agreement. Wedge, therefore, had a duty to exercise reasonable diligence in mitigating its damages. The trial court erred in concluding Wedge had no duty to mitigate damages. However, the only proof offered at trial regarding possible mitigation of damages was the sale price of the obsolete SM–30C. To the extent Indiana offered no evidence as to the damages that could have been mitigated, or that Wedge failed to exercise reasonable diligence in avoiding those damages, there was no harm to Indiana in the trial court's erroneous conclusion.[5]

Indiana was harmed, however, in the trial court's failure to give Indiana credit for the price of the subsequent sale of the SM–30C. Where a party does mitigate its damages, the breaching party is entitled to set-off the amount of damages mitigated. Therefore, the trial court is hereby ordered to decrease the adjustment price figure by $4,465.00.

## VII.

### Credit for $5,000.00

Finally, Indiana argues that the trial court erred in not granting Indiana a

---

5. We note, however, that Indiana also failed to limit its liability under the purchase agreement by requesting the "obsolete" inventory as was its right under section 4.3. Indiana well could have sold, auctioned or scrapped the inventory

items—the very action it complains Wedge failed to exercise. This does not distract from the fact that Wedge had a duty to mitigate its damages.

$5,000.00 credit on the adjustment to price. We agree. Under section 4.3, the agreement provides that Wedge shall be reimbursed for obsolete inventory: "[p]rovided, however, that no such reimbursement shall be made except to the extent that the amount to be reimbursed exceeds ·the amount of $5,000.00." This provision does not state that Wedge shall be totally reimbursed if the figure exceeds $5,000.00, but rather, that Wedge shall be reimbursed to the extent the figure *exceeds* $5,000.00. The trial court erred in not reducing the total "obsolete" inventory adjustment figure by $5,000.00, and is hereby ordered to do so.

This cause is remanded to the trial court to reduce the judgment by the amounts of $4,465.00 and $5,000.00. This reduction will require the recomputation of the pre-judgment interest allowed.

The judgment of the trial court is affirmed on issues one, two, three, four, and five. Upon issues six and seven, the judgment of the trial court is remanded for further proceedings consistent with this Opinion.

HOFFMAN, P. J., and GARRARD, J., concur.