**Marie M. ANDERSON, Appellant (Plaintiff Below),**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee (Defendant Below).**

No. 3–384A75.

Court of Appeals of Indiana, Third District.

Dec. 12, 1984.

Richard J. Conroy, Merrillville, for appellant.

David J. Hanson, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for appellee.

HOFFMAN, Judge.

Marie M. Anderson appeals a summary judgment rendered in favor of State Farm Mutual Automobile Insurance Company.

The facts herein are undisputed. Anderson was involved in an automobile collision with an uninsured motorist on July 19, 1978. The automobile operated by Anderson at the time of the collision was owned solely by her and insured by State Farm. Pursuant to her policy, State Farm paid Anderson $2,086.45 in medical payments

coverage and $15,000 in uninsured motorist coverage, the maximum recovery allowable under her policy. Anderson, who was residing with her father at the time of the collision, filed claims with State Farm attempting to collect additional uninsured motorist benefits of two insurance policies issued to her father.[1] Those claims were denied and suit was initiated by Anderson against State Farm seeking recovery under the policies. Summary judgment was rendered in favor of State Farm, the trial judge concluding that Anderson was not entitled to liability coverage under her father's policies and therefore could be excluded from uninsured motorist coverage thereunder.

The following issues are presented for review:

   (1) Is Anderson entitled to coverage under the liability section of her father's insurance policies?

   (2) If she is not entitled to liability coverage, may State Farm properly exclude her from coverage under the uninsured motorist provisions of the policies?

▮▮▮▮ Pursuant to the Ind. Rules of Procedure, Trial Rule 56, summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions and affidavits on file with the court show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. T.R. 56; *Bell v. Northside Finance Corp.*, (1983) Ind., 452 N.E.2d 951. A genuine issue exists, so as to preclude summary judgment, if the trial court would be required to resolve disputed facts. *Lawson v. Howmet Aluminum Corp.*, (1983) Ind.App., 449 N.E.2d 1172. A fact is said to be material if its existence facilitates the resolution of any of the issues involved. *Havert v. Caldwell*, (1983) Ind., 452 N.E.2d 154.

▮▮▮▮ In reviewing a summary judgment, this Court may not weigh the evi-

dence nor resolve disputes as to different inferences which might be drawn from undisputed facts. The moving party bears the burden of establishing that no material facts are in issue and all doubts and inferences must be resolved in favor of the non-moving party. *Burdsall v. City of Elwood*, (1983) Ind.App., 454 N.E.2d 434.

▮▮▮▮ The first issue of this appeal centers upon an alleged ambiguity in the State Farm insurance policies as to the persons entitled to coverage thereunder. It is true, as Anderson points out, that an ambiguous insurance contract must be construed against the insurer. *Taylor et al. v. Amer. Underwriters*, (1976) 170 Ind.App. 148, 352 N.E.2d 86. Ambiguity in an insurance contract exists when it is susceptible to more than one interpretation and reasonably intelligent men would honestly differ as to its meaning. *Northland Ins. Co. v. Crites*, (1981) Ind.App., 419 N.E.2d 164. An ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other's. *Northland Ins. Co., supra.* If the court does not find ambiguity in the language of the contract, it will be given its plain and ordinary meaning. *Miller v. Dilts*, (1984) Ind., 463 N.E.2d 257.

▮▮▮▮ Contract provisions respecting insurance are subject to the same rules of interpretation and construction as are other contract terms. Courts must consider all of the provisions of the contract to ascertain its meaning, not just individual words, phrases or paragraphs, and must accept a construction which harmonizes the provisions rather than one which views the provisions as conflicting. *Loving v. Ponderosa Systems, Inc.*, (1983) Ind.App., 444 N.E.2d 896.

Section I of the State Farm policies identifies those persons entitled to liability coverage for bodily injury and property damage. The term "insured" for purposes of liability coverage is defined as follows:

---

1. The two policies provide uninsured motorist coverage in the amounts of $15,000 and $50,000 respectively.

"Insured—the unqualified word 'insured' includes

(1) the named insured, and

(2) if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and

(3) *if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and ....*" (Emphasis added.)

The definition of insured however must be read in conjunction with two additional paragraphs pertaining to liability coverage.

"COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

(A) bodily injury sustained by other persons, and

(B) property damage,

caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the *owned motor vehicle ....*

\*　　\*　　\*　　\*　　\*　　\*

USE OF NON–OWNED AUTOMOBILES

If the named insured is a person or persons, and if during the policy period such named insured owns a motor vehicle covered by this policy and classified as 'pleasure and business', such insurance as is afforded by this policy with respect to the owned motor vehicle under:

2. "Temporary Substitute Automobile—means an automobile not owned by the named insured or his spouse while temporarily used with the permission of the owner as a substitute for the described motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

3. "Newly Acquired Automobile—means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if

(1) coverages A and B applies to the use of a *non-owned automobile* by:

(a) the first person named in the declarations or,

(b) *if residents of the same household, his spouse or the relatives of either, and ....*" (Emphasis added.)

■ Anderson is the daughter of the named insured, William Mager, and was residing in his home on the date of the collision. However, for her to be entitled to liability coverage under the policies, she must have been operating, at the time of the collision, an "owned motor vehicle" or a "non-owned automobile," as those terms are defined by the policies. An "owned motor vehicle" is defined in the policies as follows:

"Owned Motor Vehicle—means the motor vehicle ... described in the declarations, and includes a temporary substitute automobile, [and] a newly acquired automobile ...."

The Monte Carlo automobile driven by Anderson at the time of the collision was owned by her. Her automobile is not listed among those for which insurance coverage was acquired by her father. No evidence was submitted, nor does Anderson make any claim, that her automobile was a "temporary substitute" [2] or "newly acquired," [3] as those terms are defined in the policies. Therefore, in order for Anderson to be afforded liability coverage under Section I, the automobile driven by her must qualify as a non-owned automobile.

■ The definition of a "non-owned automobile" appears as follows:

"Non-Owned Automobile—means an automobile, trailer or detachable living quarters unit, not

(1) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and

(2) PROVIDED THAT NO INSURANCE SHALL BE APPLICABLE TO SUCH NEWLY ACQUIRED AUTOMOBILE UNLESS AS A CONDITION PRECEDENT THE NAMED INSURED WITHIN 30 DAYS FOLLOWING SUCH DELIVERY DATE APPLIES TO THE COMPANY FOR INSURANCE ON SUCH NEWLY ACQUIRED AUTOMOBILE."

(1) owned by,

(2) registered in the name of, or

(3) furnished or available for the frequent or regular use of

the named insured, his spouse, or any relative of either residing in the same household ...."

The automobile operated by Anderson was not a "non-owned automobile" as defined in the policies since it was owned solely by her and was therefore specifically available to her for her use.

Since Anderson was driving neither an owned motor vehicle nor a non-owned automobile at the time of the collision, the trial court properly concluded that she was not entitled to liability coverage as provided for in Section I of the State Farm policies.

■■■ Section III of the State Farm policies provides for uninsured motorist coverage.

"COVERAGE U—DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED MOTOR VEHICLES

To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle ...."

The extension of coverage, however, is expressly limited.

"EXCLUSIONS—SECTION III

THIS INSURANCE DOES NOT APPLY:

\* \* \* \* \* \*

(b) TO BODILY INJURY TO AN INSURED WHILE OCCUPYING OR THROUGH BEING STRUCK BY A LAND MOTOR VEHICLE OWNED BY THE NAMED INSURED OR ANY RESIDENT OF THE SAME HOUSEHOLD, IF SUCH VEHICLE IS NOT AN OWNED MOTOR VEHICLE ...."

Anderson was injured while occupying her own automobile, not an "owned motor vehicle" as defined above. She therefore is excluded from uninsured motorist coverage under paragraph (b). Anderson is without coverage under *both* the liability and uninsured motorist sections of her father's policies.

Anderson suggests that irrespective of liability coverage, she should be provided uninsured motorist coverage as a matter of public policy. The Indiana Uninsured Motorist Statute, to which she refers, allows for the inclusion of uninsured motorist coverage within policies,[4]

"insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle ... with respect to any motor vehicle registered or principally garaged in this state ...."

IND.CODE § 27-7-5-1.[5]

■■■ It has repeatedly been held that any language in an insurance contract which dilutes or diminishes the protection required by the uninsured motorist statute is contrary to public policy. *Dravet v. Vernon Fire & Cas. Ins. Co.*, (1983) Ind.App., 454 N.E.2d 440; *Scalf v. Globe American Cas. Co.* (1982) Ind.App., 442 N.E.2d 8; *Ind. Ins. Co. v. Noble*, (1970) 148 Ind.App. 297, 265 N.E.2d 419. However, the term "insured" is not defined by the statute, *Vernon Fire & Cas. Ins. Co. v. Amer. Under., Inc.*, (1976) 171 Ind.App. 309, 356 N.E.2d 693, nor have insurance companies been required to extend uninsured motorist coverage to any particular class of insureds such as relatives or residents of the named insured's household. *Indiana Lumbermens Mut. Ins. Co. v. Vincel*, (1983) Ind. App., 452 N.E.2d 418; *Indiana Farmers Mut. Ins. Co. v. Speer*, (1980) Ind.App., 407 N.E.2d 255.

Indiana courts have uniformly held that there is no violation of the Indiana Unin-

---

**4.** However, the named insured has the right to reject uninsured motorist coverage.

**5.** The above statute was repealed, recodified, and renumbered as IND.CODE §§ 27-7-5-2 to 27-7-5-6, by Acts of 1982.

sured Motorist Statute unless an insurance policy specifically limits uninsured motorist protection as to persons who would otherwise qualify as insureds for liability purposes. *Connell v. American Underwriters, Inc.*, (1983) Ind.App., 453 N.E.2d 1028; *Indiana Lumbermens Mut. Ins. Co. v. Vincel, supra; Indiana Farmers Mut. Ins. Co. v. Speer, supra.*

The policy behind linking uninsured motorist coverage to liability coverage is to reward those who obtain insurance coverage for the benefit of those they might injure. Persons who are uninsured for purposes of liability coverage should not be protected by the public policy of this state from their own kind. Frandsen, *Insurance*, 1981 Survey of Recent Developments in Indiana Law, 15 Ind.L.Rev. 259 (1982).

Anderson, being uninsured for purposes of liability coverage under her father's insurance policies, may be excluded from coverage under the policies' uninsured motorist provisions.

Summary judgment is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.