**FIRST INTERSTATE BANK OF NORTHERN INDIANA, N.A. f/k/a The National Bank and Trust Company of South Bend, Appellant (Plaintiff below),**

v.

**DELCAMP, INC., d/b/a Michiana Mack, Inc., et al. Appellees (Defendants below).**

No. 71A03–8703–CV–80.

Court of Appeals of Indiana, Third District.

Oct. 29, 1987.
Rehearing Denied Dec. 14, 1987.

ment.

John T. Mulvihill, Lynn C. Tyler, Barnes & Thornburg, South Bend, for appellant.

Joseph L. Amaral, South Bend, for appellees.

HOFFMAN, Judge.

The First Interstate Bank of Northern Indiana (the Bank) appeals the trial court's grant of summary judgment in favor of defendants, Delcamp, Inc., Ronald and Audrey Delcamp individually, and Michiana Mack, Inc. (collectively referred to as Michiana Mack). This action was initiated on February 19, 1986, by the Bank's complaint seeking to collect on two notes that were due and payable. The trial court found that the Bank had been fully paid, and on appeal the Bank raises only one issue, namely: whether summary judgment was improper because there is a genuine issue of material fact regarding whether the Bank has been fully paid.

Michiana Mack, a truck dealership located in South Bend, Indiana, was indebted to the Bank on two notes, as of the date of summary judgment the total amount due, including collection costs and attorney fees, was $341,886.96.[1] As security for the notes the Bank held interests in Michiana Mack's accounts receivables and parts inventory. The notes were also personally guaranteed by Ronald and Audrey Delcamp.

At some point before February 19, 1986, the Bank, for reasons not germane to this appeal, felt itself insecure about repayment. The Bank then exercised its option to accelerate the notes' due dates and began employing various methods to obtain immediate repayment. On February 18 and 19 the Bank exercised its right of setoff against the accounts Michiana Mack maintained at the Bank. The Bank obtained $123,789.84 through this remedy. Next the Bank sent letters to Michiana Mack's account debtors and ultimately collected $124,473.74 from them. Additionally, the Bank attached and sold Michiana Mack's parts inventory for $131,000.00. Adding these amounts, the Bank had collected $379,263.58 by March 24, 1986.

By March 24 the Bank had applied enough of the collected funds so that its accounts showed zero balances on both loans. A Bank clerk, apparently acting out of habit or mistake stamped each note as paid.

This situation was complicated on May 7, 1986 when the Deutsche Credit Corporation (Deutsche) filed suit against the Bank in the United States District Court. Deutsche was the floor plan financer for Michiana Mack's inventory of Iveco trucks. According to Deutsche's security agreement, each time Michiana Mack sold an Iveco truck the proceeds were to be directly remitted to Deutsche. Instead, as Deutsche's complaint alleged, Michiana Mack had deposited $73,271.64 of proceeds into its own accounts at the Bank. These accounts were the ones that the Bank setoff against Michiana Mack's debt. Deutsche claimed priority in the accounts because it held a

---

1. There is some dispute as to the exact amount owed. The figure cited is from the trial court's written judgment and will be used for convenience in this opinion. However, given the disposition of this case, the trial court will have an opportunity to address and resolve the dispute.

perfected purchase money security interest which extended to proceeds. On May 22, the Bank filed its answer to Deutsche's complaint in which the Bank admitted liability for $34,358.89 and contested the rest of Deutsche's claim.

Michiana Mack filed for summary judgment, in the present case, in July. Simply stated, the motion argued that the Bank had collected $379,263.58 to cover a debt of $341,886.96 and that the Bank's own records showed the notes had been paid. Predictably, the Bank responded with affidavits and documents that averred most of the above facts and a memorandum of law that argued that the Bank had not been fully paid because of its admitted and contingent liability to Deutsche. On September 22, 1986 the trial court issued its findings and entered summary judgment in favor of Michiana Mack.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Ind.Rules of Procedure, Trial Rule 56(C); *Taylor-Chalmers, Inc. v. Bd. of Com'rs* (1985), Ind.App., 474 N.E.2d 531.

A genuine issue exists if the trial court is required to resolve disputed facts or weigh evidence to reach a decision and a fact is material if its existence is decisive to the action, or if its existence or non-existence facilitates resolution of the case. *Anderson v. State Farm Mut. Auto. Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170

In this case the sole issue raised is whether the Bank has been paid in full and therefore, the Bank's receipt or non-receipt of full payment is the central material fact; dispositive of this action. Analysis of the relevant case-law demonstrates that the issues being litigated in the pending District Court action also involve a fact material to this case, and until that action is fully resolved, there will remain a genuine issue of material fact.

In *Fleece v. O'Rear, et al.* (1882), 83 Ind. 200, the Supreme Court addressed a factual situation very similar to the present case. In *Fleece*, the appellee, O'Rear, purchased land from the appellant, Fleece. For the purchase price, Fleece accepted a note due in four months. At the same time O'Rear was acting as the administrator of an estate where O'Rear's wife was the residuary legatee of any cash remaining after the decedent's debts had been paid. After paying all known debts, cash remained and the wife agreed to use the money to pay her husband's note. Fleece accepted the payment and surrendered the note.

Subsequently, a new creditor of the decedent appeared and, since the estate's cash had been distributed, the sureties of the administrator's bond were required to pay the debt. Fleece, who was also one of the sureties was ultimately required to repay the other sureties on the theory that the payment he received on the note did not belong to O'Rear and should have gone to pay the new creditor. Thereafter Fleece sued O'Rear claiming that the note had not been paid. The Supreme Court, in reviewing this question, held:

"The application of money, which did not belong to ... O'Rear, in payment of appellant's note, did not operate as a payment. When the appellant was compelled to pay the money to the persons to whom it belonged, the note, though surrendered, remained in force precisely as though the application had never been made. *The application of money upon the note, that did not belong to the payor, neither transferred the title to the money, nor did it extinguish the note.*" (Emphasis added.) 83 Ind. at 202–203.

Accordingly, the Supreme Court approved the trial court's finding that Fleece could maintain an action for non-payment of the note.

In the present case, as in *Fleece*, the Bank took, as payment, money, whose title has come under question. *Fleece* makes clear that until ownership of the funds in the accounts is determined it will be impossible to hold that the Bank has been fully paid and therefore there will remain a genuine issue of material fact. Consequently summary judgment was improperly grant-

ed and this cause is reversed and remanded.

Reversed and remanded.

GARRARD and MILLER, P.JJ., concur.