**Lisa HARDEN and Ancel Harden, Appellants–Plaintiffs,**

v.

**MONROE GUARANTY INSURANCE COMPANY, Appellee–Defendant.**

No. 41A01–9207–CV–210.

Court of Appeals of Indiana, First District.

Dec. 29, 1993.

Peter Campbell King, Cline, King & King, P.C., Columbus, for appellants-plaintiffs.

Julie L. Michaelis, Wooden, McLaughlin & Sterner, Indianapolis, for appellee-defendant.

NAJAM, Judge.

## STATEMENT OF THE CASE

Lisa and Ancel Harden ("Hardens") appeal from a declaratory judgment for Monroe Guaranty Insurance Company ("Monroe Guaranty") denying Lisa coverage for injuries from an automobile accident which occurred while Lisa was a customer of Independent Auto Brokers ("IAB"). Monroe Guaranty insured IAB under a garage dealers policy. The trial court held that Lisa was neither an insured nor an underinsured motorist under the policy.

We affirm.

## ISSUES

The Hardens purport to raise eighteen issues on appeal.[1] We consolidate and restate the issues as follows:

1. Whether the trial court erred in concluding that the underinsured motorist coverage endorsement under the policy was unambiguous.

2. Whether the trial court erred in concluding that Lisa was not an "insured" under the liability section of the policy.

3. Whether the trial court erred in concluding that Lisa was not driving an IAB-owned vehicle at the time of her accident and was, therefore, not an "insured" under the underinsured motorist endorsement nor entitled to underinsured coverage.

## FACTS

On November 25, 1988, Ancel Harden visited IAB's used car lot and inspected a 1986 Ford Bronco. The vehicle was part of IAB's inventory held for sale under an "exclusive listing agreement" between Billie Bush, the vehicle's owner, and IAB. IAB allowed Ancel to take the vehicle home over the weekend so that his wife, Lisa, could test-drive the vehicle.

---

1. Appellate counsel would be wise to heed the words of Former Chief Justice Burger: .

 "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most only a few key issues.... A brief that raises every colorable issue runs the risk of burying good arguments." *Jones v. Barnes* (1983), 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 994.

Lisa was driving the vehicle on November 26, 1988, when she was involved in an automobile accident with Leslie Wilson on U.S. Highway 31 in Franklin, Indiana. On the date of the accident, IAB was insured under a garage dealers insurance policy issued by Monroe Guaranty. Lisa was insured by United Farm Bureau Mutual Insurance Company ("Farm Bureau") for an amount equal to the compulsory financial responsibility limits.

In their declaratory judgment action, the Hardens sought coverage from Monroe Guaranty for the injuries Lisa sustained in the accident in excess of the coverage which her Farm Bureau policy provided. The trial court entered judgment for Monroe Guaranty. The Hardens appeal.

## DISCUSSION AND DECISION

### Standard of Review

■ Upon written motion, the trial court entered findings of fact and conclusions thereon in support of its judgment, pursuant to Indiana Trial Rule 52(A). When reviewing special findings, we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Williams v. Rogier* (1993), Ind.App., 611 N.E.2d 189, 192, *trans. denied.* We will reverse the trial court's judgment only if its findings are clearly erroneous. *Id.* "In deciding whether the special findings are clearly erroneous, we consider only the evidence which supports the judgment, and we will affirm the judgment unless the record is devoid of facts or inferences supporting the trial court's findings." *Id.* at 192–93.

### Issue One: Ambiguity

■ We first address the Hardens' contention that the policy is ambiguous and should be construed in their favor. In the policy, the term "owned autos only" is used to describe "covered autos" under the un-

derinsured motorist coverage endorsement. Because the term "owned autos only" is not defined, the Hardens contend that there is an ambiguity with respect to underinsured motorist coverage. We disagree.

■ There is no rule of construction that every term in an insurance contract must be defined, and the mere fact that a term is not defined does not render it ambiguous. Whether a contract is ambiguous is a question of law, and where the court determines there is no ambiguity, the terms of the contract are conclusive and the construction of those terms is also a matter of law to be determined by the court. *Indiana Industries, Inc. v. Wedge Products, Inc.* (1982), Ind.App., 430 N.E.2d 419, 423. An insurance contract is ambiguous "when it is susceptible to more than one interpretation and reasonably intelligent men would honestly differ as to its meaning." *Anderson v. State Farm Mutual Automobile Insurance Co.* (1984), Ind.App., 471 N.E.2d 1170, 1172. Ambiguity does not exist simply because a controversy exists between the parties, with each favoring a different interpretation. *Id.* Courts will give an insurance contract its plain and ordinary meaning when no ambiguity is present in the language of the contract. *Id.*

Under the interpretation urged by the Hardens, Lisa was an insured because she occupied a vehicle which was "owned" by IAB and was, therefore, a covered auto. However, the policy term "owned autos only" is unambiguous and does not support that interpretation. The Hardens cannot assert and then exploit an alleged ambiguity in the meaning of this term merely by contending that IAB was the equitable owner because it controlled the vehicle, or was the registered owner because IAB's dealer plate was on the vehicle, or was the statutory owner as a conditional sales vendee.[2] The Hardens cannot "bootstrap

2. The Hardens also urge that we find coverage for Lisa by construing the the term "owned autos only" against Monroe Guaranty. Generally, if an insurance contract is ambiguous, it will be construed against the insurer and in favor of

the insured. *Monroe Guaranty Insurance Co. v. Campos* (1991), Ind.App., 582 N.E.2d 865, 870. However, the policy here is not ambiguous, and Lisa is not entitled to a construction of the policy which is favorable to her position. In-

[their] position by 'interpreting' ambiguities into the [policy]." *See Indiana Industries,* 430 N.E.2d at 423.

The exclusive listing agreement gave IAB only a limited right to possession and control of the vehicle for the purpose of selling it. There are no indicia of ownership which would support a reasonable construction under the policy that IAB owned the vehicle. *See Issue Three.* Accordingly, there was no error in the trial court's conclusion as a matter of law that the policy was unambiguous with respect to underinsured motorist coverage.

### Issue Two: Liability Coverage

 The Hardens raise a plethora of issues and sub-issues, but whether or not there is coverage for Lisa as an insured under the Monroe Guaranty policy presents a direct question of contract interpretation. The provisions of an insurance contract are subject to the same rules of construction as are other contracts. *Selleck v. Westfield Insurance Co.* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.* The construction of a written contract is a question of law. *Id.*

 Simply put, Lisa seeks underinsured motorist coverage under an endorsement to the Monroe Guaranty policy.[3] Indiana's uninsured motorist statute requires that insurers make uninsured and underinsured motorist coverage available to insureds in every automobile liability policy. IND.CODE § 27–7–5–2. In interpreting this statute, we have held that the legislature intended only those persons insured under the liability portion of the policy should be entitled to coverage under the uninsured motorist provision. *Indiana Farmers Mutual Insurance Co. v. Speer* (1980), Ind.App., 407 N.E.2d 255, 258–59. Uninsured motorist coverage is for the protection of persons insured and not for vehicles.[4] *Id.* at 257. Accordingly, whether Lisa is entitled to underinsured motorist coverage turns upon whether she is an "insured" under the liability provision of the policy.

Here, the policy declarations state that liability coverage is provided for "any auto" driven by an "insured." The policy specifies that the customers of an auto dealership are not "insureds" unless a customer has no other available insurance, or has other available insurance that is less than the compulsory or financial responsibility law limits.[5] In any case, the policy

---

deed, even if the term "owned autos only" were ambiguous, we would not construe the policy in Lisa's favor. Lisa was not a party to the Monroe Guaranty policy. IAB paid the premiums on the policy and the Hardens were covered under their own policy. When an unnamed insured seeks coverage under an insurance policy, courts may determine the general intent of the contract from a neutral stance. *Indiana Lumbermens Mutual Insurance Co. v. Statesman Insurance Co.* (1973), 260 Ind. 32, 34, 291 N.E.2d 897, 899; *American Family Mutual Insurance Co. v. National Insurance Association* (1991), Ind.App., 577 N.E.2d 969, 971. If the person claiming coverage has never paid "a penny's premium to the insurer," he should not get the benefit of the general rule of construction against the insurer. *Indiana Lumbermens,* 260 Ind. at 34, 291 N.E.2d at 899.

3. In the endorsement to the policy, the term "underinsured motor vehicle" is included within the term "uninsured motor vehicle." *See* Record at 19 (Endorsement at p. 3). The terms are companion terms in the statute which requires insurers to offer such coverage. *See* IND.CODE § 27–7–5–2. For the purpose of this opinion and the cases cited herein, the terms are used interchangeably.

4. "The policy behind linking uninsured motorist coverage to liability coverage is to reward those who obtain insurance coverage for the benefit of those they might injure. Persons who are uninsured for purposes of liability coverage should not be protected by the public policy of this state from those of their own kind." *Anderson v. State Farm Mutual Auto Insurance Co.* (1984), Ind.App., 471 N.E.2d 1170, 1175.

5. The policy's language reads as follows:
 "1. WHO IS AN INSURED
 a. The following are 'insureds' for covered 'autos:'
 (1) You for any covered 'auto.'
 (2) Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:
 . . . .
 (d) Your customers, if your business is shown in the Declarations as an 'auto' dealership. However, if a customer of yours:
 (i) Has no other available insurance (whether primary, excess or contingent), they are an 'insured' but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged.

only insures customers for an amount equal to those limits. Lisa was insured under her Farm Bureau policy for the minimum amount required by law. Thus, Lisa does not qualify as an "insured" under the liability component of the Monroe Guaranty policy.

■■■ The Hardens contend, nevertheless, that Lisa is entitled to coverage by operation of law because (1) the definition of an "insured" under the liability coverage section of the policy is a "super escape clause" which contravenes the public policy of this state and (2) the definition of "insured" denies underinsured motorist coverage to a person insured under the liability portion of the policy. Appellants' Brief at 31–32. Monroe Guaranty counters that the Hardens have waived this issue because they did not present it to the trial court and, in any event, that there is no merit to these contentions. Without regard to whether the Hardens waived this issue, we conclude the policy's definition of an "insured" does not violate the public policy of this state and that Lisa is not entitled to coverage by operation of law.

■■■ Language in an insurance policy which limits or diminishes the protection required by the uninsured motorist statute is contrary to public policy. *Whitledge v. Jordan* (1992), Ind.App., 586 N.E.2d 884, 886. However, there is no violation of the Indiana uninsured motorist statute "unless an insurance policy specifically limits uninsured motorist protection as to persons who would otherwise qualify as insureds for liability purposes." *Anderson*, 471 N.E.2d at 1175. The limitation clause in the Monroe Guaranty policy neither diminishes the coverage required by the uninsured motorist statute nor limits uninsured motorist protection to a person who otherwise qualifies as an insured, because Lisa does not qualify as an insured under the liability coverage section of the policy.

We recently held that a provision limiting an insurer's liability to the statutory minimum for permissive users was not against public policy. *See Allstate Insurance Co. v. United Farm Bureau Mutual Insurance Co.* (1993), Ind.App., 618 N.E.2d 31, 35. In *Allstate,* the insured gave his sister-in-law permission to use his car, and she was involved in an accident resulting in severe injury to the other driver. The insured's policy limited bodily injury and property damage liability coverage for permissive users to the minimum requirements of the financial responsibility statute. We noted that our supreme court has found household exclusion clauses are valid, *see Transamerica Insurance Co. v. Henry* (1990), Ind., 563 N.E.2d 1265, 1269, and that the owner of an automobile in Indiana is not required to carry liability insurance for permissive users. *Allstate,* 618 N.E.2d at 35 (citing *Safeco Ins. Co. v. State Farm Mutual Insurance Co.* (1990), Ind.App. 555 N.E.2d 523, 524).

■■■ *Allstate* illustrates that our financial responsibility laws do not require an owner to provide a non-owner operator with insurance coverage but only require coverage by either the owner or the non-owner operator up to the statutory minimum under Indiana Code § 9-25-2-3. *See Allstate,* 618 N.E.2d at 34–35. In sum, a policy provision which limits an insurer's liability for a particular class of drivers to the statutory minimum is valid.

In this case, the Monroe Guaranty policy provides limited liability coverage for IAB customers up to the minimum required under the financial responsibility statute, whether the customer is uninsured or underinsured. This kind of limitation clause is not against public policy; rather, the coverage furthers the policy underlying our uninsured motorist statute by providing coverage up to the minimum compulsory limits for persons injured on the highways. We find no error in the trial court's conclusion that Lisa did not qualify as an insured under the liability coverage of the

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged, they are an 'insured' only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance."

policy and that the limitation clause is not against public policy.

### Issue Three: Coverage Under the Endorsement

■ IAB's underinsured motorist coverage is contained in an endorsement to the Monroe Guaranty policy. The endorsement's definition of an "insured" is different than the definition in the liability coverage and states that an "insured" is a person occupying a "covered auto" at the time of her accident. For uninsured and underinsured motorist coverage, covered autos are defined as "owned autos only." Thus, our last inquiry becomes whether the uninsured motorist endorsement, standing alone, provides coverage where the liability provision of the policy does not and whether it would make any difference if IAB owned the vehicle.

When liability coverage and uninsured motorist coverage within the same policy differ, we have held that "the most reasonable interpretation of our uninsured motorist statute is one which results in coverage when the person is listed as a person insured under the liability portion of the policy." *Speer*, 407 N.E.2d at 259. In *Speer* we considered dissimilar liability and uninsured motorist coverage provisions within the same policy. The class of persons covered under the uninsured motorist provision was somewhat larger than that covered under the liability provision. There was no endorsement in *Speer*, but the reasoning in *Speer* was based upon the policy behind our uninsured motorist statute and also applies here.

■ An endorsement is ancillary to the policy, and it must be read together, construed and reconciled with the policy to give effect to the whole. Here, *Speer* controls, and we conclude that the endorsement supplements the policy and provides underinsured motorist coverage only for those otherwise insured under the liability provision of the policy. We have held that Lisa was not an "insured" under the liability portion of the policy. *See Issue Two.*

Because Lisa was not an "insured" under the liability provision of the policy, she was not an "insured" under the underinsured motorist endorsement.

■ In any event, on these facts, Lisa would still not qualify as an "insured" under the terms of the endorsement because IAB did not own the vehicle. Monroe Guaranty contends that the exclusive listing agreement created a consignment[6] relationship between IAB and Bush, rather ·than the relationship of buyer and seller. We must agree.

"The three primary indicia of ownership of personal property are *title; possession;* and *control,* which includes the right to sell, dispose of, or transfer." *Meridian Mortgage Co., Inc. v. State* (1979), 182 Ind. App. 328, 339, 395 N.E.2d 433, 439 (emphasis in original). In this case, Bush retained title, and IAB's possession and control of the vehicle was limited to displaying the vehicle on the sales lot, providing maintenance and repair for the vehicle, directing the use of the vehicle for test-driving and providing a temporary dealer plate for the vehicle as part of IAB's inventory, all for only thirty days. IAB did not have an unlimited right to sell, dispose of, or transfer the vehicle. IAB was not authorized to sell the vehicle for any price; rather, Bush indicated that he wanted to be contacted regarding offers. The agreement also contemplated that the vehicle could be sold by someone other than IAB. In short, IAB did not exercise control over the vehicle. Bush retained title and control over sale of the vehicle, and thus, retained ownership.

■ The primary test of whether a transaction in the form of an agency to sell or consignment creates the relationship of buyer and seller, or principal and agent, is the intention of the parties gathered from the whole effect of the language used. *Reynolds Metal Co. v. Indiana Department of State Revenue* (1983), Ind.App., 433 N.E.2d 1, 18. As shown above, Bush retained complete control over sale of the

---

**6.** "The term 'consignment,' used in a commercial sense, ordinarily implies an agency and denotes that property is committed to the consignee for care or sale." Blacks Law Dictionary 278 (5th ed. 1979). In other words, a consignment is a "bailment for sale." *Id.*

vehicle. The language of the listing agreement indicate that the parties intended for IAB to act as Bush's agent in the sale of his vehicle, and there is nothing in the agreement which suggest that Bush intended to sell his vehicle to IAB. The facts and terms of the listing agreement do not support the Hardens' contention that the exclusive listing agreement was, in effect, an agreement for a conditional sale which made IAB the "statutory owner" of the vehicle under Indiana Code § 9–4–1–11(d).[7] We conclude that the trial court did not err in finding that IAB held the vehicle in its inventory under a consignment with Bush and that the vehicle was not owned by IAB.

### CONCLUSION

We hold that the policy was unambiguous, that Lisa Harden was not an insured under the liability coverage provisions of the Monroe Guaranty policy, that Lisa was not driving an IAB-owned vehicle when the accident occurred and that she was not entitled to underinsured motorist coverage under the terms of the policy, the endorsement, or by operation of law. The evidence supports the trial court's findings, and the findings support the trial court's conclusion. Thus, the judgment is not clearly erroneous.

The judgment of the trial court is affirmed.

BAKER and ROBERTSON, JJ., concur.

---

**7.** Likewise, the use of an IAB dealer registration plate is not dispositive of ownership because dealer plates do not necessarily indicate dealer ownership and because such plates may be used on motor vehicles in a dealer's inventory held for sale under consignment. *See* IND.CODE § 9–18–26–6; *Haskell v. Peterson Pontiac GMC Trucks* (1993), Ind.App., 609 N.E.2d 1160, 1164.