**MERIDIAN MUTUAL INSURANCE COMPANY, Defendant–Appellant,**

v.

**Norman RICHIE and Joyce Richie, Plaintiffs–Appellees.**

No. 64A03–8707–CV–191.

Court of Appeals of Indiana, Third District.

Jan. 27, 1988.

David J. Hanson, Robert D. Brown, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for defendant-appellant.

Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, for plaintiffs-appellees.

GARRARD, Presiding Judge.

In March 1981 appellee Norman Richie was struck by an automobile owned by one Jean Zicherl. Zicherl's auto was insured with a policy which provided liability coverage of $15,000 per person and $30,000 per occurrence. Richies sued Zicherl for personal injuries and reached a settlement for $19,000.

Richie was insured at the time by Meridian Mutual. His policy provided bodily injury liability coverage of $100,000 per person and $300,000 per occurrence. Richie's policy also provided uninsured/underinsured motorist protection. The policy declarations recited that coverage for uninsured motorist protection was $15,000 each person, $30,000 per accident. Richies' policy defined underinsured automobile as follows:

The term 'underinsured automobile' means an automobile with respect to the ownership, maintenance or use of which the sum of the limits under all bodily injury bonds and insurance policies applicable at the time of the accident is less than the applicable limit of liability under this insurance.

Richies instituted this action against Meridian Mutual upon their policy seeking to recover for damages they assert were not compensated by the Zicherl settlement. They contend they are entitled to protection up to $100,000–$300,000 limits of their liability coverage under the policy. Meridian Mutual's position is that the coverage for underinsured motorist liability is the same as for uninsured motorists; that the applicable limits are $15,000 and $30,000; and that since Zicherl had liability insurance in those amounts there was no underinsured automobile.

Both sides moved for summary judgment. The trial court denied both motions stating "that there is a genuine issue of material fact as to whether a reasonable person would interpret the policy language ... 'less than the applicable limit of liabili-

ty under this insurance,' as referring to the limits of liability as set forth in the uninsured motorists coverage, or as referring to the limits of liability as set forth under the bodily injury coverage." We granted this interlocutory appeal to resolve the questions thus presented.

The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court. *Eli Lilly & Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467; *State Sec. Ins. Co. v. Ottinger* (1985), Ind.App., 487 N.E.2d 446.

■ Thus even if the policy contains an ambiguity, resolution is normally a question of law for the court. *Eli Lilly & Co., supra.* It is only where a contract is ambiguous and interpretation rests upon extrinsic evidence that the factfinder must determine the facts upon which the construction rests. *Wilson, Admx. v. Kauffman* (1973), 156 Ind.App. 307, 296 N.E.2d 432. There is no contention that resolution of the question before us is dependent upon extrinsic evidence. Thus, interpretation of the policy is before us as a question of law.

The question is what is the proper antecedent for the phrase "applicable limit of liability" as used in the policy definition of underinsured automobile?

It seems elementary that in considering a suggested ambiguity we should look first to the context in which the term or phrase appears. Frequently, the potential confusion created by the word or term considered in isolation can be confidently resolved simply by placing it in the context in which it has been used.

In the policy before us the definition of "underinsured automobile" appears in a separate section of the policy entitled "Family Protection Against Uninsured Automobiles." On the next line of the policy in parentheses appears the phrase "Including Underinsured Automobiles." This caption is followed by a general paragraph which states:

> The terms and conditions of this coverage are applicable only when the additional premium and limit of liability are shown under Uninsured Motorist on the policy declarations or amended declara-

tions endorsement or policy change endorsement.

The definition of underinsured automobile then appears along with the definition of uninsured automobile in subsection II,C,1 of that section. As previously noted, the policy declarations for uninsured motorists coverage show under the caption "limit of liability" $15,000 for each person and $30,000 for each accident in the column headed "Uninsured Motorists."

■ We find that the reference to the "applicable limit of liability" is, thus, made clear and unambiguous. The antecedent of the term is the liability under the uninsured motorist liability provision for which a separate premium was charged. Other jurisdictions considering the problem have reached the same conclusion. *See, e.g., Hagen v. J.C. Penney Cas. Co.* (1984), 16 Ohio App.3d 218, 475 N.E.2d 177; *Mitchell v. State Farm Mutual Automobile Ins. Co.* (1984), 227 Va. 452, 318 S.E.2d 288; *Wert v. Picciano* (1982), 189 N.J.Super. 178, 459 A.2d 697; *St. Arnaud v. Allstate Ins. Co.* (S.D.Miss.1980), 501 F.Supp. 192.

Richies seek to avoid the result of this interpretation by arguing that it leads to the conclusion that they paid a premium for illusory insurance which has in essence no value. They rely upon language from the opinion in *Glazewski v. Allstate Ins. Co.* (1984), 126 Ill.App.3d 401, 81 Ill.Dec. 349, 466 N.E.2d 1151 reversing dismissal of a claim asserting misrepresentation and fraud in marketing certain underinsured motorist coverage provisions. We do not find the policy coverage illusory. The argument is premised upon the contention that state financial responsibility law at the time of the collision required Indiana drivers to maintain bodily injury insurance in amounts of $15,000 per person and $30,000 per collision. *See IC 9-2-1-15.* Thus, if Richies collided with an Indiana driver who was in compliance with the financial responsibility law they would in fact not be entitled to recover anything under their underinsured motorist coverage. The argument ignores the fact that some Indiana drivers would, nevertheless, be uninsured

having failed to secure or maintain policies, or underinsured as the consequence of policies purchased in other states. It also ignores the question of whether licensed drivers from other states might be operating on Indiana highways with lesser approved amounts of insurance.

We cannot agree that the coverage was illusory. Presumably, Richies could have purchased greater liability coverage for uninsured or underinsured motorists had they chosen to do so and been willing to pay the premium therefor.[1]

We conclude the provision in question was unambiguous and limited underinsured motorist liability to $15,000 per person and $30,000 per accident. Since Zicherl had insurance in those amounts, she did not meet the definition of an underinsured motorist and the court erred in denying Meridian Mutual's motion for summary judgment.

The case is remanded with instructions to enter summary judgment in favor of the defendant, Meridian Mutual Insurance Company.

HOFFMAN and SULLIVAN, JJ., concur.

---

1. Amendments to IC 27–7–5–2 effective January 1, 1988 require insurers to offer uninsured/underinsured motorist coverage in the liability coverage amount of the policy.