**MERIDIAN MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Norman RICHIE and Joyce Richie, Appellees.**

No. 64S03–8906–CV–481.

Supreme Court of Indiana.

June 22, 1989.

Robert D. Brown, Spangler, Jennings, Spangler & Dougherty, P.C., Merrilville, for appellant.

Thomas F. Mackie, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellees.

## ON CIVIL PETITION FOR TRANSFER

GIVAN, Justice.

The Court of Appeals reversed the trial court and remanded with instructions to enter summary judgment in favor of appellant, Meridian Mutual Insurance Company. *Meridian Mutual Ins. Co. v. Richie* (1988), Ind.App., 517 N.E.2d 1265. We grant

transfer, vacate the decision of the Court of Appeals, and order the trial court to enter summary judgment for appellees Norman and Joyce Richie.

As summarized by the Court of Appeals, the facts are: In March 1981, Norman Richie was struck by an automobile owned by Jean Zicherl, whose auto was insured under a policy providing liability coverage of $15,000 per person and $30,000 per occurrence. The Richies filed suit for personal injuries against Zicherl and reached a settlement in the amount of $19,000.

The Richies were insured at the time of the accident by Meridian. The policy provided bodily injury liability coverage of $100,000 per person and $300,000 per occurrence. It also provided uninsured/underinsured motorist protection; the policy stated the company's liability under "uninsured motorists" to be $15,000 per person and $30,000 per accident.

The Richies filed this action against Meridian to recover under their underinsured motorist provision the difference between the $19,000 damage settlement and Zicherl's policy's $15,000 limit of liability. Meridian refused to pay the $4,000, contending the Zicherl vehicle did not qualify as an "underinsured automobile" under the Richies' policy because Zicherl's vehicle carried liability insurance meeting the limit of liability of the Richies' underinsured motorist coverage.

Each party moved for summary judgment. The trial court denied both motions, ruling that there was an issue of material fact as to whether a reasonable person would interpret the policy language to allow coverage.

The Court of Appeals first noted that interpretation of an insurance policy is primarily a question of law for the court, citing *Eli Lilly and Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467, *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991. Only when ambiguities cannot be resolved within the four corners of the contract is a fact finder needed to determine those extrinsic facts upon which interpretation of the contract may rest. *Kordick v. Merchants Nat. Bank and Trust Co.*

(1986), Ind.App., 496 N.E.2d 119. We agree.

■ The Court of Appeals then went on to find that the reference to "applicable limit of liability" was made unambiguous by certain provisions in the Richies' policy. One section of the policy is entitled "Family Protection Against Uninsured Automobiles/(Including Underinsured Automobiles)." This caption is immediately followed by the statement:

"The terms and conditions of this coverage are applicable only when the additional premium and limit of liability are shown under Uninsured Motorist on the policy declarations or amended declarations endorsement or policy change endorsement."

This provision is followed by definitions of both uninsured and underinsured automobiles. "Underinsured automobile" is defined as:

"[A]n automobile with respect to the ownership, maintenance or use of which the sum of the limits under all bodily injury bonds and insurance policies applicable at the time of the accident is less than the applicable limit of liability under this insurance."

From the foregoing provision and definition, the Court of Appeals concluded the "applicable limit of liability" for underinsured motorist coverage is the same as for uninsured motorist coverage, to wit: $15,000 per person and $30,000 per accident.

In their petition to transfer, the Richies contend the Court of Appeals erred in finding the limit of liability for underinsured motorist coverage to be unambiguous. They argue the Court of Appeals failed to consider all the definitions of "underinsured automobile" set forth on page five of the policy. The Richies argue that a third definition, which states: "[B]ut the terms 'uninsured automobile' and 'underinsured automobile' shall not include: (a) an insured automobile ..." leads to the absurdity that an underinsured automobile cannot be insured at all, thus leaving this third definition meaningless and rendering the other two ambiguous.

In determining the amount due for loss under an insurance policy, the true meaning of the contract must be ascertained from all its provisions, and not from a literal or technical construction of an isolated or special clause. *Commercial Union Assur. Co., Ltd. v. Schumaker* (1918), 71 Ind.App. 526, 119 N.E. 532. In the case at bar, all three definitions must be construed together. In the subsection immediately preceding the definitions of "underinsured automobile," the term "insured automobile" is defined as one insured under the instant policy; thus the definition alleged to reach an absurd conclusion merely serves to exclude vehicles covered under the Richies' policy from the class of vehicles designated as "uninsured" and "underinsured." While the limit of liability for underinsured motorist coverage is not made precisely clear by the policy terms, we find that, standing alone, they lead to but one conclusion: that the "applicable limit of liability" is the same as for the uninsured motorist coverage.

■ We also find, however, that resolution of the alleged ambiguity does not absolve Meridian from liability under the policy.

Meridian's set-off conditions to recovery as set forth on page six of the policy provide that the amount of liability insurance carried by an underinsured vehicle will be set off against the limit of liability of the policy's underinsured motorist coverage. The Richies contend this set-off condition, when invoked in conjunction with a $15,000/$30,000 limit of liability, renders illusory their underinsured motorist coverage. As that same amount of liability coverage was at the time of the accident mandated in Indiana by statute, Ind.Code § 9-2-1-15, the Richies argue that vehicles registered in this state would carry liability insurance in at least the same amount as set as the upper limit of liability for their underinsured motorist coverage, or would not carry any liability insurance at all and thus fall under their uninsured motorist coverage.

The Richies cite *Glazewski v. Allstate Ins. Co.* (1984), 126 Ill.App.3d 401, 81 Ill.

Dec. 349, 466 N.E.2d 1151, *modified on other grounds, Glazewski v. Coronet Ins. Co.* (1985), 108 Ill.2d 243, 91 Ill.Dec. 628, 483 N.E.2d 1263, wherein dismissal of a claim of fraud and misrepresentation was reversed upon a finding that coverage identical to the Richies' was illusory, *i.e.,* a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances.

The Court of Appeals nonetheless found the Richies' coverage not to be illusory, citing examples where recovery could be realized. However, as indicated in *Glazewski, supra,* uninsured drivers would be covered by the policy's uninsured motorist coverage. Moreover, injuries caused by "licensed drivers from other states ... operating on Indiana highways with lesser approved amounts of insurance" would be excluded from the underinsured motorist coverage by the policy terms. Section II.C. found on page five of the policy states:

> "The term 'uninsured automobile' means: 1. an automobile including an underinsured automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, (a) no bodily injury bond or insurance policy applicable at the time of the accident...."

Thus the only remaining foreseeable set of circumstances listed by the Court of Appeals in which the Richies could recover under their underinsured motorist coverage is that of the hypothetical Indiana driver who is "underinsured as the consequence of policies purchased in other states." Policies issued to Indiana residents, even by out-of-state companies, are either written to comply, or held to comply, with Indiana law. *See* Ind.Code § 27–7–5–2(a). Thus the likelihood of the Richies ever recovering under this last remaining circumstance seems to us sufficiently remote to be deemed illusory. While the limit of liability applicable to the underinsured motorist provision is not technically ambiguous, the restrictive definitions of "underinsured automobile" along with Meridian's set-off conditions to recovery nevertheless render the Richies' underinsured motorist coverage illusory.

Courts should strive to give effect to the reasonable expectation of the insured; an ambiguous policy should be construed to further its basic purpose of indemnifying the insured for his loss. *Lilly, supra.* The set-off of one insurer's liability from another insurer's liability is justified by the public policy of preventing double recovery by an insured for the same damages. *Cody v. Connecticut General Life Ins. Co.* (1982), 387 Mass. 142, 439 N.E.2d 234. On the other hand, such set-off is not justified when it results in a windfall for the policy writer while leaving the insured only partially compensated for his injuries. Such "other insurance" clauses limiting the insured's recovery to the minimum liability coverage amount required by statute have been held to be in derogation of our uninsured motorist statute and to be of no effect. *Simpson v. State Farm Mut. Auto. Ins. Co.* (S.D.Ind.1970) 318 F.Supp. 1152.

Nevertheless, in 1987 our legislature amended the uninsured motorist statute, enacting set-off provisions which in substance limit an insured's recovery in the same manner as do Meridian's set-off conditions. Ind.Code § 27–7–5–5(c). However, this amendment avoids resulting in illusory underinsured motorist coverage because the same Act, P.L. 391–1987(ss), contemporaneously amended the statute to require that "uninsured and underinsured motorist coverages must be provided by insurers ... in limits equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured." Ind.Code § 27–7–5–2(a).

Thus while enacting limitations on coverage to promote strict coordination of benefits among insurers, our legislature has at the same time mandated that an insured either be protected against loss caused by uninsured/underinsured drivers to the same extent as that insured has seen fit to

indemnify others for his own potential liability, or positively be made aware that his uninsured/underinsured coverage is less than his liability coverage by being required to reject equal coverage in writing. The alleged ambiguity in the case at bar, then, has prospectively been resolved by statutory amendment embodying the principle that in the absence of executing a written rejection of underinsured motorist coverage equal to his own liability coverage, an insured may presume he is protected from the negligence of others under his policy to the same extent he has protected others from his own negligence.

The 1987 amendments to the uninsured motorist statute indicate that at the time the Richies' policy was written by Meridian, the legislature intended, and public policy favored, a presumption that an insured's coverage protecting him from other drivers be of the same magnitude as his own bodily injury liability coverage. *See United States Fidelity & Guar. v. DeFluiter* (1983), Ind.App., 456 N.E.2d 429. In the case at bar, the 1987 amendment favors a presumption that the Richies reasonably could have believed that they in fact were buying greater coverage to protect against underinsured motorists.

While the words "applicable limit of liability under this insurance" are not technically ambiguous when construed within the four corners of the insurance contract, its terms and conditions nevertheless violate as a matter of law the public policy interests which disfavor illusory coverage and favor indemnification of an insured to the same extent to which he is willing to protect others. *See Anderson v. State Farm Mut. Auto. Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170. In the case at bar, we hold

that the Richies' damages over the amount covered by Zicherl's liability coverage should be indemnified by Meridian.

The decision of the Court of Appeals is vacated. The trial court is hereby ordered to enter summary judgment in favor of plaintiffs/appellees Norman and Joyce Richie.

SHEPARD, C.J., and PIVARNIK, J., concur.

DICKSON, J., dissents with separate opinion in which DeBRULER, J., concurs.

DICKSON, Justice, dissenting.

I disagree first with the majority's determination that the Meridian Mutual underinsured motorist coverage is illusory. It was not. The policy provided meaningful coverage to the Richies for operating their insured vehicles in any of at least fourteen sister jurisdictions that had minimum liability limits less than those applicable in Indiana on the date of the accident.[1] In the event of an accident in one of these jurisdictions, the Meridian Mutual underinsured motorist coverage would have applied to protect the Richies by supplementing such lower minimum limits.

Furthermore, I disagree with the majority's reliance upon 1987 revisions to the Indiana uninsured motorist statute as retroactively relevant to the interpretation of an insurance policy issued seven years earlier on September 14, 1980, and as applied to an accident that occurred March 7, 1981. The 1987 legislation is not logically probative, and should not be viewed to create a presumption regarding the Richies' reasonable expectations in 1980.

---

1. Alabama ($5,000/$10,000), Ala.Code § 32–7–2(10) (1983); Delaware ($10,000/$20,000), Del.Code Ann. tit. 21–2118(a)(2)(b) (1979); District of Columbia ($10,000/$20,000), D.C. Code Encycl. § 40–435 (West 1987); Florida ($10,000/$20,000), Fla.Stat.Ann. § 324.021 (West 1987); Hawaii ($10,000/$20,000), Hawaii Rev.Stat. §§ 287–1 and 287–25 (1976); Kentucky ($10,000/$20,000), Ky.Rev.Stat.Ann. 304.–39–110 (Baldwin 1986); Louisiana ($5,000/$10,000), La.Rev.Stat.Ann. tit. 32 § 861 (West 1987); Massachusetts ($10,000/$20,000), Mass. Gen.Laws Ann. Ch. 90, § 34A (West 1987); Mis-

sissippi ($5,000/$10,000), Miss.Code Ann. § 63–15–43(2)(b) (1986); New York ($10,000/$20,000), (limits are $50,000/$100,000 for death of person/s), N.Y. Vehicle and Traffic § 311 (McKinney 1986); Ohio ($12,500/$25,000), Ohio Rev.Code Ann. § 4509.01 (Baldwin 1986); Oklahoma ($10,000/$20,000), Okla.Stat. Ann. tit. 47, § 7–204 (West 1987); Pennsylvania (No minimum limits until 1984), Pa.Stat.Ann. tit. 75, § 1701 (Purdon 1987); Texas ($10,000/$20,000), Tex.Rev.Civ.Stat.Ann. Art. 6701h § 1 (Vernon 1986); Wyoming ($10,000/$20,000), Wyo.Stat. § 31–9–102 (1987).

Because I find no illusory coverage and decline to apply 1987 legislation to construe the 1980 insurance contract, I respectfully dissent from the majority opinion.

DeBRULER, J., concurs.