Thomas TATE, Appellant
(Plaintiff Below),

v.

SECURA INSURANCE, a Mutual Company, Appellee (Defendant Below).

No. 49A02–8906–CV–288.

Court of Appeals of Indiana,
Second District.

Oct. 30, 1990.

W.F. Conour, Rex E. Baker, Conour Doehrman, Indianapolis, for appellant.

Steven H. Frank, Carter and Leerkamp, Indianapolis, for appellee.

SULLIVAN, Judge.

Thomas Tate (Tate) appeals the court's decision granting summary judgment in favor of Secura Insurance, a Mutual Company (Secura). The controversy involves a claim under the underinsured provision of Tate's policy with Secura.

We affirm.

Tate presents four issues for our review. However, we need only address the following two:

(1) Whether the underinsured motorist provisions of Tate's automobile policy with Secura require setoff of amounts recovered by Tate from the tortfeasor;

(2) Whether the court erred in striking portions of the affidavit of an insurance expert offered by Tate to assist the court in the interpretation of insurance contracts.

Tate was seriously injured on December 20, 1986, when he stopped to assist a friend, Vivian Anderson, whose car had stalled in the parking lane of a street in Indianapolis. While Tate was looking under the hood, another automobile collided with the rear of Anderson's car, causing Tate's legs to be crushed between the Anderson car and a van parked in front of it. The police later determined that the

driver of the car which caused the accident was intoxicated.

Tate eventually settled with the driver's insurance company in the sum of $50,000, the maximum payable under the driver's bodily injury liability insurance policy. Prior to this accident, Tate had purchased a policy with Secura containing an underinsurance provision with a maximum liability limit of $50,000 per person and $100,000 per occurrence. Because Tate's damages exceeded the $50,000 recovery from the tortfeasor, Tate attempted to collect from Secura. Secura denied the claim, and Tate initiated the law suit in question.

On October 18, 1988, Secura moved for summary judgment. Secura argued that although Tate did have underinsured motorist coverage, he was not entitled to recover under the language of the policy providing for a reduction in the amounts payable by any sums paid to the insured by the party legally responsible. Secura also argued that Tate had breached his agreement with Secura by failing to secure its consent to Tate's settlement with the tortfeasor. Tate also moved for partial summary judgment. On March 17, 1989, the court granted summary judgment in favor of Secura and denied Tate's motion for partial summary judgment. Tate appeals.

## I.

■ Tate argues that, under the language of his insurance policy with Secura, the tortfeasor in this case constituted an underinsured motorist because Tate's damages exceeded the policy limits of the tortfeasor's insurance, and therefore the court erred in granting summary judgment in favor of Secura.

The interpretation of a contract is primarily a question of law for the court. *Eli Lilly & Co. v. Home Insurance Co.* (1985) Ind., 482 N.E.2d 467. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). In the present case, the facts are not disputed. The controversy arises over the interpretation of the terms used in the insurance policy.

The insurance provisions relating to underinsured motorist coverage in Tate's insurance policy provide, in relevant part:

"PART III—UNINSURED MOTORISTS COVERAGE AND UNDERINSURED MOTORISTS COVERAGE"

\*    \*    \*    \*    ·    \*    \*

COVERAGE C–2 UNDERINSURED MOTORISTS COVERAGE

We will pay damages which an *insured person* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of *bodily injury* sustained by an *insured person* and caused by an accident.

\*    \*    \*    \*    \*    \*

We will pay under Coverage C–2 only after the limits of liability under any applicable *bodily injury* liability bonds or policies have been exhausted by payment of judgments or settlements.

\*    \*    \*    \*    \*    \*

ADDITIONAL PROVISIONS APPLICABLE TO PART III ONLY

\*    \*    \*    \*    \*    \*

3. *'Underinsured motor vehicle'* means a land motor vehicle or trailer, which is insured by a liability policy or bond at the time of the accident which provides *bodily injury* liability limits less than the amount of total damages an *insured person* is legally entitled to recover but which are uncompensated because the damages exceed those limits.

\*    \*    \*    \*    \*    \*

D. Reductions in the Amounts Payable
   Amounts payable will be reduced by:
1. Amounts paid because of the *bodily injury* by, or on behalf of, persons or organizations who may be legally responsible." Record at 10–11.

Tate argues that the language of the policy relating to underinsured motorist coverage creates a "damages to coverage" policy whereby the insured is entitled to collect the difference between the limits of the tortfeasor's policy and the actual damages sustained by the insured up to the

limits of the underinsured coverage. *See Underinsurance in Indiana: an Illusion of Coverage?* (1988) 21 Ind.L.Rev. 205. Tate's assessment of the policy is based particularly upon the language which defines an "underinsured motor vehicle" as a vehicle having *"bodily injury* liability limits less than the total damages an insured person is legally entitled to recover." Relying on this language, Tate maintains that he is entitled to recover from Secura the difference between his actual damages (estimated to be over $100,000) and the $50,000 he received from the tortfeasor, up to his policy limits of $50,000.

Our inquiry does not cease upon a review of the policy definition of an underinsured motor vehicle. It is clear that the tortfeasor in this case constituted an underinsured motorist under the policy.[1] However, the focus of controversy in this case is over the section of the policy in Part III entitled "Reduction in Amounts Payable" which provides that Secura will reduce the "amounts payable" by amounts paid by parties who may be legally responsible for the bodily injury. Secura argues that this means amounts paid by the underinsured tortfeasor will be set off against the underinsured motorist policy limits. In this case, the underinsured motorist policy limits were $50,000. Tate received $50,000 from the tortfeasor. Therefore, Secura maintains that Tate is not entitled to recover any amount under his underinsured motorist coverage.

Tate argues that "Reductions in Amounts Payable" means reductions from the amount of *total damages* an insured is legally entitled to recover from the party or parties at fault. Tate argues that to treat the provision otherwise would render the language inconsistent with section C–2 which sets out the basic coverage with respect to Underinsured Motorists.

In this regard, it is important to note that the very general statement of basic coverage as recited in Coverage C–2 with respect to UNDERINSURED MOTORISTS COVERAGE must be read in conjunction with the other provisions concerning that coverage.

The "total damages to coverage" analysis determines whether the tortfeasor's vehicle is or is not an "underinsured vehicle"[2] but does not fix the allowable recovery by the injured party under his own policy coverage.

That the basic coverage provision is otherwise limited may also be divined from the third paragraph of that portion of the policy which as hereinbefore set forth recites:

"We will pay under Coverage C–2 only after the limits of liability under any applicable *bodily injury* liability bonds or policies have been exhausted by payment of judgments or settlements."

This portion clearly contemplates a set-off of amounts collected from other policies against the amount payable under the underinsured coverage of the policy being construed.

In *Giardino v. American Family Insurance* (1987) 164 Ill.App.3d 389, 115 Ill.Dec. 501, 517 N.E.2d 1187, the Illinois Court of Appeals, construing language nearly identi-

1. We note that under the Indiana statutes now in effect, the tortfeasor in this case would not have been considered an underinsured motorist. Ind.Code 27–7–5–4(b) (Burns Code Ed.Supp. 1990) defines an underinsured motor vehicle as follows:

"(b) For the purpose of this chapter, the term 'underinsured motor vehicle', subject to the terms and conditions of such coverage, includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle as defined in subsection (a)."

In the present case, the policy was purchased and the accident occurred prior to the effective date of this statute and Ind.Code 27–7–5–5, which provides a computation for determining the amount of underinsured coverage. Therefore, we need not consider these statutes and confine our review to the language contained in the policy.

2. As noted in footnote 1, the definition of "underinsured vehicle" has been changed so that other policy limits are stacked and offset against the limits of the injured person's own coverage. Thus, if the limits of other policies in total sum exceed the limits of the insured's own underinsured coverage, the insured's policy pays nothing. In such instance the underinsured provision is wholly inapplicable.

cal to the underinsured motorist policy language which is the subject of this action, held:

"In the present case, the language of the limitation could not be clearer. Any amount which the defendant could owe pursuant to underinsured motorist coverage is reduced by a payment from the underinsured motorist. The plaintiff's policy provided underinsured motorist coverage of $100,000, and the underinsured motorist paid $100,000 to the plaintiff. Therefore, according to the policy, the plaintiff is not entitled to a recovery. The plaintiff argues that the limiting provision is ambiguous because it conflicts with the provision providing coverage. We disagree. The language establishing the underinsured motorist coverage must be read with the limitation to establish the boundaries of coverage." *Giardino*, 164 Ill.App.3d at 391, 115 Ill.Dec. at 502, 517 N.E.2d at 1188. *See also, Johnson v. American Family Mutual Insurance Co.* (1990) 193 Ill.App.3d 794, 140 Ill.Dec. 783, 789, 550 N.E.2d 668, 674.

A determination that "amounts payable" refers to total damages and not policy limits would render ineffective the contractual limitation upon the maximum amount which the insurer may be required to pay. *Aetna Casualty & Surety Co. v. Kenner* (1990) Del., 570 A.2d 1172.

We hold that the language of the policy providing that "amounts payable" will be reduced by amounts paid to the insured by the party legally liable unambiguously refers to the policy limits of $50,000.

▮ Tate asserts that the interpretation of the policy which we adopt leads to a conclusion that he purchased illusory insurance because he paid a premium for coverage which would not benefit him under any reasonably expected set of circumstances. He relies upon our Supreme Court's decision in *Meridian Mutual Insurance Co. v. Richie* (1989) Ind., 540 N.E.2d 27. In that case, Richie had purchased a policy providing the same insurance coverage as the minimum coverage which Indiana drivers were required by statute, I.C. 9–2–1–15, to maintain. The policy covered the insured to the extent that "the sum of the limits under all bodily injury bonds and insurance policies applicable at the time of the accident is less than the applicable limit of liability under this insurance." *Id.* at 29. The Supreme Court rejected the Court of Appeals' determination that this coverage was not illusory because it protected Richie from injuries caused by drivers from other states which have lesser minimum insurance requirements. The Supreme Court held that the language of the policy there involved specifically excluded coverage with respect to policies with limits of less than the amount required in Indiana. The Supreme Court therefore held the insurance to be illusory and violative of public policy. *Id.*

Upon rehearing however, our Supreme Court, admitting that they misread the policy, reversed their earlier holding and determined that the underinsured motorist coverage would have covered injuries caused by drivers from states requiring lesser minimum insurance than Indiana. *Meridian Mutual Insurance Co. v. Richie* (1989) Ind., 544 N.E.2d 488, 489. This consideration alone was sufficient for the court to hold that "the policy issued by Meridian to Richie does not violate the public policy against illusory coverage." *Id.* at 490.[3]

Richie was injured in an accident which occurred in March of 1981. Therefore, if the policy issued to Richie was not against public policy, certainly the policy in the present case was not against public policy. Tate purchased his policy in November of 1986 and was injured the following month. Moreover, the limit of Tate's coverage was $50,000 per person and $100,000 per occurrence, exceeding the statutory minimum in

---

**3.** We note that in *Landis v. American Interinsurance Exchange* (1989) 1st Dist. Ind.App., 542 N.E.2d 1351, our First District held that an underinsured motorist provision providing the same amount of coverage as the statutory minimums was illusory. However, the court based its decision upon our Supreme Court's original holding in *Meridian Mutual Insurance Co. v. Richie,* 540 N.E.2d 27. Because the Supreme Court has since abrogated its earlier position, it would appear that the *Landis* decision has been overruled.

Indiana of $25,000 per person and $50,000 per occurrence. Ind.Code 9–2–1–15 (Burns Code Ed.Repl.1987). Therefore, even with respect to other Indiana drivers, Tate's underinsurance provided meaningful coverage and was not illusory.[4]

We conclude that the policy in this case contained a provision allowing Secura to set off the insurance proceeds which Tate received from the tortfeasor's insurer and that such a provision was not illusory. Since Tate received $50,000 from the party legally responsible and his policy with Secura had a $50,000 limit, he was not entitled to receive any amount from Secura. The court did not err in granting Secura summary judgment.

### II.

Tate also argues that the court erred in striking the affidavit of John Hammond. Tate submitted the affidavit to "assist the trial court in the interpretation of the Policy terms." Appellant's Brief at 32. Tate asserts that John Hammond is an expert in the insurance field, and his opinions were admissible to explain the terms used in the policy in accordance with the custom and usage of those terms in the insurance industry.

■ Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *State Security Insurance Co. v. Ottinger* (1985) 2d Dist. Ind.App., 487 N.E.2d 446, 447; *Anderson v. State Farm Mutual Auto. Insurance Co.* (1984) 3d Dist. Ind.App., 471 N.E.2d 1170. Terms of a contract are not ambiguous merely because a controversy exists between the parties concerning the proper interpretation of the terms. *Id.* at 1172. Where the contract is unambiguous, its construction is a matter of law to be determined by the trial court. *Bush v. Mayerstein–Burnell Financial Services* (1986) 2d Dist. Ind.App., 499 N.E.2d 755; *Interstate Auction, Inc. v. Central National Insurance Group, Inc.* (1983) 4th Dist. Ind. App., 448 N.E.2d 1094.

■ The cases which Tate cites address contracts containing ambiguities. As we have already determined, the terms of the policy in this case are clear and unambiguous. Therefore, the court did not require the assistance of an expert to properly construe the plain and ordinary meaning of the terms used. It was not error for the court to strike John Hammond's affidavit.

The judgment is affirmed.

ROBERTSON, J., concurs.

SHIELDS, P.J., dissents with opinion.

SHIELDS, Presiding Judge, dissenting in part and concurring in part.

I respectfully dissent and vote to reverse the judgment of the trial court with instructions to grant Thomas Tate's motion for partial summary judgment.

I agree the interpretation of a contract is a question of law for the court. However, in my opinion, both the trial court and the majority opinion misinterpret the subject contract.

The critical provision in Tate's underinsured motorist coverage contract with Secura Insurance is the provision defining the coverage. In that provision Secura agrees:

COVERAGE C–2 UNDERINSURED MOTORISTS COVERAGE

We will pay damages which an *insured person* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of *bodily injury* sustained by an *insured person* and caused by an accident.

Record at 10. The coverage provided is payment of damages for bodily injury to an insured, caused by an accident with an underinsured motor vehicle, in any amount up to of course the underinsured's policy limit.

Another essential provision, of course, is the provision which defines an *"underinsured motor vehicle"* as

4. Even a $25,000 per person and $50,000 per occurrence minimum of underinsured motorist coverage would afford some protection to an insured if he were injured by an Indiana driver carrying the same minimums, who also injured two or more other people. If the driver's maximum insurance of $50,000 is split more than two ways, it becomes apparent that at least some of the injured parties would receive less than $25,000 and might benefit from their own underinsurance. See discussion and example in *Underinsurance in Indiana: an Illusion of Coverage?* 21 Ind.L.Rev. 205, 216 (1988).

a land motor vehicle or trailer, which is insured by a liability policy or bond at the time of the accident which provides *bodily injury* liability limits less than the amount of total damages an *insured person* is legally entitled to recover but which are uncompensated because the damages exceed those limits.

Record at 11.

In the present situation it is undisputed the bodily injuries Tate sustained as a proximate result of the fault of the tortfeasor exceed $50,000. It is also undisputed the tortfeasor is an underinsured motorist because the tortfeasor's bodily injury liability coverage is $50,000, an amount less than the damages Tate is legally entitled to recover from tortfeasor. Applying these undisputed facts to the unambiguous language of the underinsurance contract, Secura agreed to pay Tate the damages he is legally entitled to recover from the underinsured tortfeasor, those damages being in an amount in excess of $50,000, but which Tate is unable to receive from the tortfeasor because Tate's damages exceed the tortfeasor's bodily injury liability limits. Stated in the words of the contract

> We [Secura] will pay damages [an undetermined amount in excess of $50,000] which [Tate] is legally entitled to recover from the [tortfeasor] because of *bodily injury* sustained by [Tate] and caused by an accident.

Record at 10.

The remaining pertinent provision provides that "[a]mounts payable will be reduced by ... [a]mounts paid because of the *bodily injury* by, or on behalf of, persons or organizations who may be legally responsible." Record at 11. This unambiguous provision provides that when the amount of bodily injuries Tate is entitled to recover from the tortfeasor are determined, the amount Secura has contractually obligated to pay under its underinsured motorist coverage will be reduced by the amount paid by the tortfeasor, here $50,000. Of course, in no event, is Secura obligated to pay Tate an amount, after the credit for the tortfeasor's payment, in excess of its coverage of $50,000.

In plain words, in my opinion, the instant contract provides Tate with underinsured motorist coverage for bodily injury damages Tate sustains to the extent those bodily injuries exceed the bodily injury coverage of the underinsured motorist up to the limits of Tate's own coverage.

I concur in the majority's opinion the trial court did not err in striking the affidavit of John Hammond because I, too, conclude the terms of the instant contract are unambiguous and its construction a matter of law for the trial court or, if the trial court errs in that construction, for this court.

I do not reach the other two issues which Secura asserts justify the summary judgment in its favor: that Tate waived his claim because he failed to assert claims and thereby exhaust the limits of liability under all liability policies and that Tate is estopped from recovering from Secura because he settled his claim against the tortfeasor without Secura's consent and thereby destroyed Secura's subrogation rights. These issues involve genuine issues of disputed material fact which makes summary judgment inappropriate.