81 F.3d 163
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
AMERICONTAINER LIMITED PARTNERSHIP, an Illinois Limited
Partnership, Plaintiff-Appellee/Cross-Appellant,
v.
Sharyn L. RANKIN, as Personal Representative of Robert S.
Rankin, Deceased, Defendant-Appellant/Cross-Appellee.
 Nos. 95-2269, 95-2375.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 20, 1996.
Decided April 3, 1996.
 
 Before CUMMINGS, CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 In this successive appeal, defendant Sharyn Rankin, on behalf of Robert Rankin, (collectively, "Rankin") contests the district court's computation of damages in Americontainer's suit for breach of a commercial lease. In a cross-appeal, plaintiff Americontainer Limited Partnership also disputes certain aspects of the damage calculation.
 
 
 2
 In our previous Order in this case we upheld the district court's determination that Rankin had breached its lease with Americontainer and affirmed the district court's jurisdiction over the controversy. We determined that Americontainer was entitled to damages in the case, but vacated the damage award due to several errors in the district court's calculation of damages. Specifically, the district court had relied on figures from an ongoing negotiation for the lease of a replacement property rather than basing the award on a comparison of actual costs. The court also failed to discount to present value the portion of the damage award which compensated for future losses. Finally, the court awarded pre-judgment interest on the entire damage award, rather than only on the portion of the damage award which compensates for losses which Americontainer had already incurred.
 
 
 3
 We remanded the case to the district court for correction of these errors. The court recomputed the damages by comparing the costs of the Rankin lease with those of a lease with Hammond Enterprises which Americontainer entered into in order to mitigate its damages from the Rankin breach. The parties raise a variety of challenges to the new damage computation. Because we find that the district court used an unjustified interest rate for its present value calculations, we remand for correction of those calculations. On remand, the district court should also clarify the basis of its attorney's fees award and adjust the award if necessary. We affirm the judgment of the district court in all other respects.
 
 I. Background
 
 4
 The factual background of this case is set out more fully in our previous Order. Basically, Americontainer leased a portion of a building from Rankin in April, 1989, subject to Rankin's remodeling the building (which was apparently in some disrepair) to Americontainer's specifications by July, 1989. Rankin did not complete the required construction and Americontainer terminated the lease in October. In November, Americontainer executed a substitute lease with Hammond Enterprises and sued Rankin for breach of the lease and constructive eviction. The district court found Rankin liable and awarded damages to Americontainer based on the rent it paid prior to October, 1989 and on the excess costs associated with the Hammond lease.
 
 
 5
 Pursuant to our previous Order, the district court recomputed the damages, adding additional damages for appellate attorney's fees pursuant to an attorney's fees clause in the lease, and arrived at totals of $875,921.24 in compensatory damages, $33,348.59 in prejudgment interest and $73,421 in attorney's fees and costs. These figures are contested in the current appeal.
 
 II. Rankin's Appeal
 A. Forfeited Arguments
 
 6
 Rankin raises a number of issues here which could, and should, have been raised in the first appeal. These arguments have been forfeited and are not properly before us at this point.
 
 1. The Cost Comparison of the Two Leases
 
 7
 First, Rankin wages a broad attack on the use of the difference in costs between the two leases as a measure of damages. These arguments reach well beyond the scope of the limited issues which were before the district court on remand and are therefore not appropriately raised at this juncture.
 
 
 8
 Second, Rankin claims that the district court improperly construed the Rankin lease when it neglected to take account of a cost-of-living escalator in computing the rent which would have been collected over the term of the lease. p 29, Rankin Lease. This contention is probably correct. However, Rankin had the opportunity to make this claim in the original appeal. Instead, that appeal confined itself to complaints regarding the calculation of the costs of the Hammond lease. Rankin has therefore forfeited the opportunity to make this argument as well.
 
 2. Prejudgment Interest
 
 9
 Rankin argues that it was inappropriate for the district court to award pre-judgment interest in this case because the damages were not "ascertainable in accordance with fixed rules of evidence and accepted standards of valuation." Indiana Industries, Inc. v. Wedge Products, Inc., 430 N.E.2d 419, 427 (Ind.App. 3 Dist.1982). This argument was not presented in the initial appeal and is therefore forfeited. In any event it is obviously without merit. The damages upon which prejudgment interest was applied were: "security deposit; partial August, September, and October rent; layout plan expense; difference in rent paid at Hammond Enterprise Center up to date of [the] judgment; and balloon payment on construction allowance." Dist.Ct.Order. at 10. Damages of this sort are straightforwardly ascertainable and their calculation requires no exercise of judgment or discretion by the district court.
 
 B. The Discount to Present Value
 
 10
 In our earlier Order in this case, we directed the district court to discount the portion of the damage award stemming from future costs to present value. The district court has done so on remand. However, as Rankin correctly argues, the court clearly erred in using the Consumer Price Index to define a "rate of inflation" which it then used as the interest rate in determining present value. As Rankin points out, the purpose of discounting an award of future damages to present value is that money "in the bank" now is worth more than money to be awarded at a future date, because it can be invested and a return realized on the investment.
 
 
 11
 In order to discount an award of damages based on future losses to present value, therefore, the court must choose a reasonable interest rate which represents the rate at which a derived current damage award might be expected to appreciate between the time it is received and the time of the expected loss. The court must then make an award of damages calculated so that, if the award were invested at the chosen interest rate, it would have appreciated to the value of the expected loss by the time that loss occurs. The rate of inflation may have an impact on the prevailing rate at which the damage award may be expected to appreciate, but these are clearly not the same thing in theory and infrequently in practice. The case must therefore be remanded for recalculation of present value based on an appropriate interest rate.
 
 C. The Construction Allowance
 
 12
 The Rankin lease contemplated that Rankin would pay all costs of renovating the property for Americontainer's use. Under the Hammond lease, in contrast, there was a construction allowance of $430,000. The district court found, pursuant to the testimony of Americontainer representative Ralph De Falco, that $59,942.27 of this allowance was paid up front by Americontainer, while the rest was apparently to have been taken from the monthly rental payments (and hence, in essence, be paid by Hammond). These factual findings are not clearly erroneous.
 
 
 13
 Thus, under the Rankin lease, Americontainer would have paid nothing for improvements to the property, while under the Hammond lease it was required to pay $59,942.27 for such renovations. The district court properly concluded that this amount constituted a loss to Americontainer which it suffered when it was forced to replace the more favorable terms of the Rankin lease with those of the Hammond lease. Rankin's argument to the contrary is incomprehensible, being based, so far as one can tell, on the obviously incorrect notion that the $430,000 building allowance constituted a benefit to Americontainer not afforded it by the Rankin lease. Under the Rankin lease, Americontainer paid nothing for renovations. Under the Hammond lease, it paid $59,942.27. Thus, while the construction allowance in the Hammond lease was of some benefit to Americontainer, the Rankin lease (which required no payment by Americontainer for the necessary remodeling) clearly provided more advantageous terms.
 
 D. Attorney's Fees
 
 14
 Finally, Rankin contests the district court's award of attorney's fees and costs to Americontainer for the prosecution of its previous appeal. Rankin maintains that the district court lacked authority to award attorney's fees assessed for the appeal; that the district court erred in finding that Americontainer was a prevailing party in that appeal; and that the court determined the fee amount in an arbitrary fashion.
 
 
 15
 Regarding the authority of the district court to assess fees for appellate proceedings, Rankin cites Haroco v. American Nat'l Bank & Trust Co., 38 F.3d 1429 (7th Cir.1994). That case dealt with the award of costs for appeals pursuant to Federal Rule of Appellate Procedure 39. There we ruled that the district court did not have the authority, under Federal Rule of Civil Procedure 54, to grant an award of costs associated with printing appellate briefs, such awards being covered by Appellate Rule 39.
 
 
 16
 Haroco is completely inapposite to the case before us. Here, the district court's award of attorney's fees was made pursuant, not to any rule of appellate or district court procedure, but to a contractual provision in the lease. Parties have the right to contract regarding the payment of attorney's fees and district courts may properly construe those contracts and assess the appropriate fees. The Rankin Lease contained a provision stating:
 
 
 17
 ATTORNEY'S FEES: In case suit should be brought for recovery of the premises, or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.
 
 
 18
 Rankin Lease, p 22.
 
 
 19
 Rankin does not contest the general applicability of this provision to this lawsuit. Since costs on appeal are certainly "costs incurred in connection with [this] action" and the provision specifically included attorney's fees among recoverable costs, the district court did not err in awarding appellate attorney's fees pursuant to this clause of the Rankin Lease.
 
 
 20
 Rankin argues, however, that Americontainer was not a "prevailing party" on appeal, since it lost its cross-appeal (which disputed the district court's decision to dismiss Sharyn Rankin from the case in her personal capacity). The district court took this factor into account, however, by reducing the amount awarded to account for time spent on the cross-appeal. Thus the district court awarded fees to Americontainer only for that portion of its appellate expenses related to the issues upon which it prevailed. The district court committed no clear error in awarding attorney's fees on this basis.
 
 
 21
 Last, Rankin contends that the amount by which the attorney's fees award was reduced for time spent on the cross-appeal was arbitrary. According to the district court, "Americontainer submitted detail slips regarding attorney's fees which reflected a fee amount of $48,672.50. However, the Court reduced this amount for any time spent solely on the cross-appeal, on which Americontainer ultimately was unsuccessful, as Americontainer was not a prevailing party on this issue." Dist.Ct.Order at 11, n. 5. Rankin contends that there was no evidence of the time spent on the cross-appeal and Americontainer does not advise us to the contrary.
 
 
 22
 We agree with Rankin that the district court has failed to explain adequately its basis for reducing the attorney's fees award by the specified amount. On remand, the district court should explain its reasoning more fully and, if the reduction it has granted is not supported by sufficient evidence of the amount of time actually spent on the cross-appeal, recompute the attorney's fees award accordingly.
 
 III. Americontainer's Cross-Appeal
 
 23
 On cross-appeal, Americontainer argues that, in calculating its damages by comparing the Rankin and Hammond leases, the district court should have included a sum based on the fact that it is required to pay more for real estate taxes under the Hammond lease. Americontainer contends that the district court failed to do so because it erred in its interpretation of the real estate tax provisions.
 
 
 24
 Americontainer is correct in asserting that the Hammond and Rankin leases differ in their provisions for payment of real estate taxes. The Rankin Lease, p 28, provided that Americontainer would pay only any increases in real estate taxes which were assessed during the term of the lease. The Hammond Lease contains two provisions dealing with the payment of real estate taxes. Initially, all taxes are paid by Hammond, pursuant to p 25. Rankin, apparently having read only this paragraph, argues that Hammond pays all taxes under the Hammond Lease. However, the previous paragraph requires Americontainer to reimburse Hammond for its "proportionate share" (computed according to the fraction of the building it occupies) of the real estate taxes. p 24, Hammond Lease. The arrangement is that Americontainer initially pays a fixed escrow payment of $1516.75 per month as "additional rent." The amount is adjusted annually to account for changes in the tax rate. If Americontainer overpays, it is reimbursed by Hammond. Conversely, if tax payments made by Hammond are greater than the escrow payment, Americontainer must make up the difference.
 
 
 25
 Thus, in effect, Americontainer pays its entire real estate tax bill under the Hammond lease, while it pays only for tax increases under the Rankin lease. It is thus quite likely that Americontainer pays more for real estate taxes under the Hammond lease than it would have under the Rankin lease. However, Americontainer has presented no proof of that, admittedly likely, state of affairs.
 
 
 26
 Instead, Americontainer simply argues that the $1516.75 escrow payment should have been credited to it as damages. The difficulty with this argument is that there is no evidence in the record that the $1516.75 estimate of the tax was correct. Under the Hammond lease, Americontainer eventually pays the actual real estate taxes. Thus to prove this item of damages Americontainer would have to submit proof of the amount of actual taxes paid and compare that amount to any increases in taxes on the Rankin property. As the district court correctly concluded, "Americontainer has failed to meet its burden of proof in establishing that it had to pay more for taxes and insurance in the Hammond Enterprise Center Lease than the lease with Rankin." Dist.Ct.Order at 8. Accordingly, we affirm the district court's judgment as to Americontainer's cross-appeal.
 
 IV. Conclusion
 
 27
 In conclusion, we affirm the judgment of the district court in most respects. We remand, however, for correction of the court's error in using the rate of inflation as the interest rate for the present value calculations and for clarification (and correction, if necessary) of the attorney's fee award.